## LANDRY v. LE BLEU.

No. 1678.

Court of Appeal of Louisiana. First Circuit.

Jan. 12, 1937.

Griffin T. Hawkins and J. E. Bass, both of Lake Charles, for appellant.

Edwin F. Gayle, of Lake Charles, for appellee.

DORE, Judge.

The suit is to recover damages in the sum of $7,500 which plaintiff claims to have sustained by reason of a fall on the steps of the house in which she was living with her husband and family on May 22, 1934, in the city of Lake Charles, and which house was rented from the defendant. She alleges that as she attempted to go down the steps of said house and stepped on the last or bottom step it slipped or slid out from under her feet, causing her to fall violently to the concrete walk, badly injuring her spinal column and fracturing the lower part of her coccyx. She alleges that the step slipped or slid from under her because it was not properly fastened and was otherwise defective.

Defendant filed an exception of no right or cause of action which was overruled. This exception is not pressed in this court, and is considered as abandoned.

Defendant answered, admitting that she had rented the premises to plaintiff's husband, but denied that plaintiff had received any injuries on account of a fall on the steps and denied that the steps were defective. She averred that, if plaintiff was injured, such injury was caused by her own carelessness and negligence when she fell a few nights before while attempting to skate on roller skates; that the house occupied by plaintiff and her husband had been placed in good repair before they moved into said house; that no complaint had been made by plaintiff of her alleged injury until some nine months after she claimed to have sustained same and not until she and her husband had been forced to vacate the premises for nonpayment of

rent and after a seizure had been made in a suit filed against plaintiff's husband for the unpaid rent.

Judgment was rendered by the trial court rejecting the demands of the plaintiff. From that judgment she has appealed.

In order for plaintiff to recover, it is necessary for her to prove two things: First, that she fell on the steps of this rented house and that this fall was caused from some defect in the steps; second, that she was injured by the fall and, if so, the extent of these injuries.

The trial judge in dismissing plaintiff's suit says:

"Without discussing the evidence in detail—which consists of 183 pages—it is sufficient to say that the plaintiff in this case has failed to convince the court with any degree of certainty ·that the step, whether defective or not, ever did slip and cause the plaintiff to fall.

"The evidence further fails to convince this court with any degree of certainty that the plaintiff suffered any injury because of a fall either on the steps as she alleges, or on roller skates as is claimed by the defendant."

We are asked to reach a conclusion from the facts entirely different on all vital points in the case from that found by the trial judge. It is obvious that, for us to do so, we must find that the conclusions reached by the trial judge on the facts is clearly and manifestly erroneous. The testimony is conflicting and in many points irreconcilable.

On the important point as to whether the plaintiff fell on ·the steps as she claims there is considerable testimony in the record. The plaintiff herself claims that as she was going down these steps on the date alleged about 8 o'clock p. m. the bottom step slipped out from under her and she fell in a sitting position on the walk; that she went back into the house and went to bed and a lady who was staying in the house, Mrs. Caldwell, rubbed her back with alcohol, and one of her sons heated water bottles which were put on her back by this lady to ease the pain; that she stayed in bed for some two weeks, and is still suffering from the injury. Mrs. Caldwell says that she was in the back of the house and did not see plaintiff fall on the steps, but that plaintiff came back into the house crying and stated that she had fallen and hurt herself. Mrs. Caldwell then testifies about plaintiff going to bed and· the witness rubbing her back with the alcohol.

Two of plaintiff's sons, one about thirteen years old and the other about eleven, testify that their mother started down the steps on her way to a store, and that the bottom step skidded out from under her and she fell on the sidewalk and hurt herself. The husband of plaintiff testified that he came home on the night of the injury and found his wife in bed and Mrs. Caldwell rubbing her with alcohol and one of the boys heating water bottles. Mr. Walter Caldwell, who was staying· at this house, said that he came in shortly after the accident and saw his wife in the room with plaintiff; that shortly thereafter—he does not say how long after—he noticed that either the bottom or the second step from the bottom was misplaced, and that he replaced the step in position with his foot. This is the only witness who testified that he saw the step out of place after the alleged fall, or any other time, except the eleven year· old boy, who testified that he saw the step after his mother fell and that "it was out from the thing"; yet the boy does not say when he did make that observation. The other boy said that he saw the step from the porch where he and his brother were standing, but he did not see the step out of place either before or after the accident and did not know if any one ever fixed it.

The plaintiff testified that when she got out of bed some fourteen days after the accident she called one of the carpenters who was working on another house for defendant in the rear and asked him to fix the steps, and that this carpenter sent another man who fixed the steps.

Against this testimony as to the fall on the steps and the cause of the fall, there is not much direct testimony except that which was elicited from plaintiff's witnesses on cross-examination. The plaintiff says that she did not know this step was loose, although she testified that she had swept off these steps only two hours previous to the time of the fall. She does not know how far the step slipped, as she did not see the step after she fell, although she claims to have fallen on the sidewalk right in front of this step, and admits that she could have seen the step.

It is significant that, even though this loose step was not supposed to have been fixed by the carpenter until fourteen days ·after the accident, yet none of ·the oc-

cupants of the house who testified in the case—the plaintiff, her husband, the two boys, and Mr. and Mrs. Caldwell—testify anything about this loose step during this whole fourteen-day period, and it is indeed passing strange that the husband of this plaintiff would not have made any further inquiry or investigation of this particular step and had other witnesses to prove the looseness of the step the morning after or thereafter, even though plaintiff claimed to have sustained a very serious injury because of this loose step. It would seem natural, under circumstances of this kind, that the family, and more so the husband, would not only have examined this loose step carefully after the accident, but that the condition of the step would have given concern lest some other members of the family might fall on the loose step.

While plaintiff claims that she asked one of defendant's carpenters to fix the steps and that the steps were fixed, yet two of the carpenters who were working for defendant and who seem to have been the ones who would have known of this request testify that no request was made of them to repair the steps nor did they know of any loose step having been repaired.

It appears that Mr. Gayle was the attorney and agent for defendant in renting and handling her property. He testifies that, while he was near the premises where plaintiff lived looking after some other property of the defendant, the plaintiff called him for the purpose of paying some rent. This was on June 10th, less than a month after the alleged accident. According to Mr. Gayle's testimony, the plaintiff at that time said nothing about falling on the steps or suffering an injury. In fact, he testifies that no complaint was ever made about the steps nor of any injury until more than nine months after the alleged injury and not until the plaintiff and her husband had been forced to move out of the house and a seizure had been made for the past-due rent. In our opinion, this is a rather significant fact. It is not reasonable to suppose that, if plaintiff had suffered this severe injury as she claims, she would have made no mention of it to defendant's agent for this length of time. On the contrary, it would seem more reasonable to suppose that she would not only have complained about and pointed out the defect in the steps which caused the injury, but she would have made

known to defendant's agent her injury and the circumstances under which it occurred.

While the testimony shows that the plaintiff had consulted several doctors on various occasions for different ailments and had been operated on four times prior to the alleged injury, it is significant that she never consulted a physician for the injury which she claims to have sustained from a fall on the steps in May, 1934, until the following March, just prior to the filing of the suit.

There is some testimony in the record to the effect that plaintiff fell while skating and injured herself a few days prior to the time she claims to have fallen on the steps. There is also some testimony in the record tending to show that plaintiff made a statement to several persons that she was going to tell her husband that she fell on the steps and hurt herself. However, we do not deem this testimony very important in the determination of this case and shall not comment or detail the same.

With all of the conflict and the uncertainty in the evidence, we are not in a position to say that there is manifest error in the findings of the trial court.

For these reasons, the judgment appealed from is affirmed.