McBRIDE, Judge.
On November 1, 1948, at about 2:30 p. m., Judith Thompson, who'was then about three years old, whilé playing with several *802 other children on the landing of the stairway between the second ancl third floors of the premises 1123 Decatur Street, leaned against one of the balusters, which gave way, and as a result the child fell through the. balustrade. It seems that a young boy on the first floor, upon hearing the child cry out, managed to break her fall, but the child struck her head on a stove in the hallway on the first floor level and suffered injuries. The evidence amply shows that the stairway railing, and particularly the upright rung against which the child leaned, was in a bad state of repair, and that the accident is attributable solely to the vices and defects of the premises.
This is the suit brought by the parents of the child (who are nonjudicially separated) for her use and benefit against the owner and lessee of the premises for damages. Plaintiffs recovered judgment against both defendants in solido, from which Mrs. Guastella, who owns the premises, alone has appealed.
Appellant has been the owner of 1123 Decatur Street, a three-story building, for several years. A bar, restaurant, and clubroom are located on the ground floor; the two other floors contain dwelling quarters made up into apartments. For as long as the building has been in Mrs. Guastella’s ownership she has rented the building as a whole to various tenants, who would operate the businesses on the ground floor and sublease to other persons the living quarters on the second and third floors.
Frank Chann, one of the defendants, became Mrs. Guastella’s tenant on March 1, 1948, at which time the grandmother of the injured child, with whom the child lived, occupied the apartment on the third floor as a subtenant of the tenant who had preceded Chann. She remained in' the apartment as Chann’s lessee or as a subtenant to the date of the accident, paying her monthly rental to him.
Mrs. Guastella’s defense is that since the written lease contract which she had with Chann' imposes liability on him for vices and defects in the premises, under Act No. 174 of 1932, now LSA-R.S. 9:3221, which relieves the owners of buildings from liability to third persons injured because of defects contained therein, she cannot be held to be responsible for the injuries sustained by the'child and cast for the damages claimed by plaintiffs.
Sectioa 1 of Act No. 174 of 1932 provides :
“ * * * That the owners of buildings or premises which have been leased under a contract whereby the tenant or occupant assumes responsibility for the condition of the premises shall not be liable in damages for injury caused by any vice or defect therein to any tenant or occupant, nor to anyone in the building or on the premises by license of the tenant or occupant, unless the owner knew of such vice or defect, or should within reason have known thereof, or had received notice of such vice or defect and failed to remedy same within a reasonable time thereafter.”
The lease between the parties contains, in addition to the usual clauses found in commercial leases, the following stipulations :
“The within leased premises and appurtenances, including the locks, keys, plumbing, and glass, elevator, and heating system, if any, and all other fixtures, are accepted by the' Lessee in their present condition, except for such repairs and improvements as are written into this lease, and except such as may be needed to the roof or rendered necessary by fire or other casualty. The Lessee agrees to keep them in the same order as received, during the term of this lease, * * *."
* * * * * *
“Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, except in the case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having re *803 ceived written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.”
Provisions of a similar nature in contracts of lease have been held to be within the purview of the Act of 1932 and the lessors have been relieved from the responsibility imposed by LSA-C.C. arts. 670 and 2322. McFlynn v. Crescent Realty Corp., La.App., 160 So. 454; Paul v. Nolen, La.App., 166 So. 509; Atkinson v. Stern, La.App., 175 So. 126; Terrenova v. Feldner, La.App., 28 So.2d 287.
Appellees’ contention is that notwithstanding the contractual stipulations and the provisions of Act No. 174 of 1932, the owner is nonetheless liable in damages because she had knowledge of the vices and defects in her building and failed and persistently refused to remedy the condition.
Counsel for appellant counters with the argument that even if Mrs. Guastella had knowledge of the defective balustrade, which is denied, she cannot be held responsible in the absence of the written notice thereof to which she was entitled under the contractual provisions of the lease.
It is conceded that no written notice was ever given to Mrs. Guastella. While the provisions of the lease require such written notice, nothing appears to that effect in the act, and as we said in Mitchal v. Armstrong, La.App., 13 So.2d 506, 507:
“ * * * it is quite sufficient that-the .landlord have notice of the vice or defect or, under the prevailing circumstances, ‘should within reason have known thereof’ and ‘failed to remedy same within a reasonable time thereafter’.”
Therefore this case resolves itself into a question of fact.
The record convinces us that the building in question, located in the Vieux Carre of New Orleans, was old and in need of repairs. Some of the balusters had fallen' out previously. On one occasion after the accident, a man Walking up the stairs from the first floor placed his hand on the banister rail to steady himself, and the banister broke under his weight.
The pertinent question -is whether the owner knew or should have known of the defectiveness of the balustrade on the stair uséd by the shbtenants occupying the living quarters on the second and third floors. Chann, in testifying in his own behalf in' the lower court, admits that Mrs. Norman, the grandmother of the child, informed him that the steps leading to the third floor were in a bad condition, and that he in turn notified the real estate agent of Mrs. Guastella. Ultimately certain repairs were made to the steps. At another point in his testimony Chann stated that Mrs. Norman told him that certain other repairs should be made, and that thereupon he notified both Mrs. Guastella and her agent of Mrs. Norman’s complaint.
.Mrs. Guastella denied that she ever received any complaints emanating from Mrs. Norman, but the latter testified positively that on one occasion she showed Mrs. Guastella through the apartment on the third floor and pointed out to her its bad condition. Mrs. Norman further testified:
“Q. Did you call her attention to any other part of the stairs ? A. Yes. I showed her the banisters.
“Q. Now, what was the condition of those banisters a few days before that accident happened? A. Well, to my éstimation, it was pretty bad.
“Q. Did you do anything to show her that there was something wrong with the banister? A.' I certainly did. I shook the banister and showed her how it shook.
“Q. Flow about the rungs, the uprights on the steps and the banisters? A. Well, they , was all loose.
“Q. Did you show them to her? A. I' showed them to 'her and she knew it and I asked her would she fix it, and she said I was paying too cheap a rent to make any repairs on the building.”
Counsel for Mrs. Guastella seeks to offset the effect of the above testimony by *804 pointing out to us Mrs. Norman’s testimony-under cross-examination, which runs as follows: .
“Q. Well, did you know that before the accident or after the accident ? A. I did not know that before the accident.
“Q. In other words, that couldn’t be seen before the accident? A. It couldn’t be seen.
“Q. Nobody could have seen it? A. Nobody could have seen it.
“Q. So that nobody could have known it was defective prior to the accident? Answer that. A. That is right.”
■ The argument follows that if Mrs. Norman' could not discern the defects she could have given no notice to Mrs. Guastella.
We cannot agree that the construction which counsel places on Mrs. Norman’s testimony is a correct one. The witness on her' direct examination stated that the weakness of the banister was readily discoverable by manual test, which she demonstrated to Mrs. Guastella, and we think on her cross-examination all that she meant to imply is that although the banisters were in a bad state, such fact could not be ascertained merely upon visual inspection. “You couldn’t see it by looking at it.”
The trial court heard the affirmative assertions of Mrs. Norman, which are to some extent corroborated by Chann, and he also heard the negative statements of Mrs. Guastella. He believed Mrs. Norman’s testimony, and we quite agree that it is the most worthy of belief. Even if we had any doubts as to the verity of the witnesses, we would be reluctant to disturb the finding of the judge below on a question of fact which is not manifestly erroneous.
Undoubtedly it was the policy of Mrs. Guastella to spend as little as possible in correcting the condition of the premises. As an indication of her penuriousness, she herself, after the accident, replaced the broken baluster with a broomstick which she nailed in place by using a brick as a ■hammer.
LSA-C.C. art. 670 reads as follows:
“Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect.”
Article 2322 of the LSA-C.C. provides:
“The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.”
Our conclusion is that Mrs. Guastel-la was not relieved under the contract of lease because she had full and complete knowledge of the defects in the stair railing, or at least she should have known of them, and failed to make repairs within a reasonable time. She is clearly liable in damages.
Fortunately, Judith Thompson has fully recovered from her injuries. On the day after her fall she was conveyed to the Charity Hospital and remained there for a period of eleven days. Dr. 'Craighead, a member of" the residence staff of the hospital, testified that the child had a depressed skull fracture-in the parietal region, and that he performed an operation by means of which the fracture was elevated, and there was good recovery in about a month.
The lower court rendered judgment for $1,500 in favor of plaintiffs, and considering the nature of the injuries, which necessitated an operation, and the time spent by the child in the hospital, and also the convalescence period, we do not think that the amount awarded can be said to be excessive.
The judgment further awarded the Board of Administrators of Charity Hospital the sum of $210.80 on its intervention, plus ten per cent attorney’s fees, for the expenses of the treatment accorded Judith Thompson. Harry W. Thompson, the father of the child, was in turn decreed entitled to a judgment against the defendants for any sum recovered by the intervenor from him.
*805 There is no contest respecting the claim awarded in the intervention.
Therefore, for the reasons assigned, the judgment appealed from be and the same is hereby affirmed.
Affirmed.