180 So.2d 429 (1965)
Mary G. MORGAN and Robert F. Morgan
v.
AMERICAN INDEMNITY COMPANY.
No. 6471.
Court of Appeal of Louisiana, First Circuit.
November 16, 1965.
*430 Jerry H. Bankston, of Maughan & Bankston, Baton Rouge, for appellants.
Robert L. Kleinpeter, of Kantrow, Spaht & Kleinpeter, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This is an action by tenants, (Mary G. and Robert F. Morgan, husband and wife), against the liability insurer of their lessor, seeking compensation for personal injuries sustained by the wife in a fall on the leased premises, and medical expense and special damages incurred by the husband in treatment thereof. After trial on the merits below plaintiffs' claims were rejected and petitioners have appealed.
The issues presented are purely factual. Mrs. Morgan, alone at the time of the mishap, was the only witness to testify concerning the events and circumstances attending the accident. Our learned brother below concluded the unfortunate occurrence resulted from appellant's own inattention *431 rather than a defect in the premises.
In substance appellants' petition alleges the accident occurred on July 16, 1963, a clear, dry day, at about 10:00 A.M., as Mrs. Morgan attempted to go out the back door of the leased residence carrying a basket of washing she intended to hang on the clothes line outside. Plaintiffs further averred that after Mrs. Morgan opened the door and stepped forward her right foot slipped out from under her, she fell forward, dropped the basket of clothes, broke her fall somewhat by grasping the screen door, but nevertheless fell on the steps striking her back. The cause of appellant's fall is alleged to be the defective condition of the steps which, unknown to plaintiff, had become partially rotten causing a sag which in turn resulted in a tilt in the top step. In this regard it is alleged the top step slanted downward away from the house the extent of the slant being approximately one and one-half inches from the back to the front of the step asserted to be about ten inches in width. Lastly, the petition alleges a loose piece of wood was found at the front of the porch and that it may have caught plaintiff's foot or heel although petitioner did not know whether the wood in question had in fact precipitated her fall.
Defendant answered plaintiffs' petition denying any negligence or liability on the part of its assured, disclaiming the premises were in any manner defective, disavowing that the accident occurred as the result of a vice in the premises, averring the accident was caused by plaintiff's own inattention and, alternatively, contending plaintiffs' recovery is barred by the contributory negligence of Mrs. Morgan.
The record discloses that Mrs. Morgan, formerly employed as a nurse's aid, lived in the residence in question, situated on Woodrow Street, Baton Rouge, for slightly more than six months prior to the accident.
Plaintiff stated that after washing clothes in an automatic washer she placed the wet clothes in a wicker basket. The basket, introduced in evidence, by measurement proves to be thirty-two inches in length, twenty-three in width and eleven inches deep. According to plaintiff the basket was almost full of wet clothes including sheets, pillow cases, towels, shirts and other similar articles of apparel. Holding the basket by the handles on each end, she pushed open the door to the outside with the basket and the back of her right hand. She also testified the door opened to her right and as she pushed against it the accident occurred in the following manner:
"* * * I washed and I started to go out the door to hang up my clothes and when I pushed the door open with the basket of clothesI put my foot out and it kinda tilted and when it did I had to suddenly put the clothes down and grab the screen with my right hand and the screen opened back to the right and I grabbed on with both hands and it slung me around and I was hanging there, just dingling (sic) on the steps.. . ."
* * * *
Q Which foot struck the step?
A My right foot, and when it turned, tiltedI had to throw the basket of clothes overit was too heavy and I grabbed to this screen. With my right hand first then my left hand, and it was just scraping and whipping and dangling on the steps.
Q Did you fall completely to the ground?
A Not plumb to the ground, no.
Q Did you fall down completely on the steps?
A I was dangling on the steps, right. I was laying, holding on, you know how your feet whenever you get loose catch hold the door, well, the door slung me."
From the above cited testimony it is not clear whether plaintiff put the basket down or threw it over. At still another point in *432 her testimony she stated she dropped the basket of clothes. Notwithstanding the petition avers plaintiff slipped, in her testimony Mrs. Morgan took particular pains to point out that she did not slip. In this connection, at one point in her testimony she was emphatic in denying that she slipped, basing her denial on the fact that she had on special shoes used in her profession because they were constructed of material that "would not slip on anything."
On appeal it is conceded the steps were not rotten as alleged. It is also admitted the steps were solid and did not sag or shake when appellant placed her foot thereon. It is now contended, however, the steps were defective in that they were so constructed that the first step was approximately six inches below the threshold instead of being even therewith thus affording plaintiff a surface level with the floor of the porch on which to step when exiting through the screen door. It is also contended the first step, approximately seven inches in width, was tilted downward approximately one and one-half inches. Based on these assumptions, learned counsel for appellants argues the steps, so constructed, constituted a trap which, when Mrs. Morgan placed her right foot thereon, caused an unusual strain on her foot because of the angle of the top step and this factor, together with the weight of the clothes she was carrying, caused her to pitch forward and fall. Esteemed counsel then contends that plaintiff's use of the premises in the manner shown, did not constitute inattention but rather indicated due care on her part. Finally, able counsel takes the position the lessor was solely responsible for the accident by permitting the allegedly dangerous condition of the step to exist and it matters not whether appellants' lessor was aware of the defect or vice.
The only testimony introduced to establish the allegedly defective condition of the steps is that of Mrs. Morgan. A photograph identified by Mrs. Morgan and introduced in evidence by appellee shows three rather crude but apparently sturdy steps made of heavy material free of rot or decay. The bottom step is slightly tilted or slanted to the right as one leaves the porch. The noted condition does not appear dangerous, nor are we particularly concerned with the bottom step since the defect relied upon is the alleged slant of the top step on which plaintiff's foot rested at the time of the fall. Because of the factual question involved we cite herewith a portion of Mrs. Morgan's testimony bearing upon the assertedly defective condition of the top step:
"Q What did you say in regards specifically to the area of going out the door?
A Well, I told him that the step was tilted.
Q Which way was it tilted?
A To thelike for instance, this was up against the wall right hereit was about seven inches below the porch and it was tilted to the front.
Q It was slanted to the front?
A Slanted to the front.
Q How wide was this step?
A I would say about 7 or 8 inches wide, something in that category, I can't exactlyI didn't measure them I am just telling what Ithe best I know how.
Q Can you estimate how much the step slanted from the back of the step to the outside of the step, the front of the step?
A I would say about an inch or an inch and a half, a good inch or an inch and a half.
Q How wide was the step, lengthwise?
A How long?
Q Yes.
A About this longI don't know.

*433 Q Give us an estimate.
A Well, I can'tI'd say about four three or four feet maybe."
At another point in her deposition, Mrs. Morgan stated the top step was tilted at least an inch and a half. Her declarations regarding the degree of slant is purely estimative and is not corroborated by any other witness. The aforementioned photograph introduced in evidence was taken at an angle from a point above the steps, the photographer standing a few feet from the steps facing the rear of the residence. As a consequence the photograph does not reveal with certainty any appreciable slant or tilt in the uppermost step. Defendant introduced no testimony save the photograph, being apparently content to rely on the premise plaintiff failed to make out a prima facie case.
Astute counsel for plaintiffs contends appellants' causes of action arise ex delicto, not ex contractu, from the obligations imposed upon the lessor by LSA-C.C. Articles 2693 and 2695, and it is unnecessary to prove negligence on the part of lessor inasmuch as the landlord's obligation is absolute and extends to all defects in the leased premises, even those of which the lessor was unaware. Cited in support of appellants' position are Green v. Southern Furniture Company, La.App., 94 So.2d 508; Anderson v. Simmons, La.App., 75 So.2d 34; Thompson v. Suprena, La.App., 65 So.2d 801; Green v. Billa, La.App., 86 So.2d 578.
The primary obligations of a lessor to a tenant are to deliver the thing leased, maintain the tenant in peaceful possession thereof, and indemnify the renter for losses or injury resulting from vices or defects in the leased premises. LSA-C.C. Articles 2692-2704. The duty to indemnify the lessee for losses resulting from vices or defects in the thing leased is imposed by LSA-C.C. Article 2695 which, in effect, also prescribes that the obligation to maintain the leased premises in good condition constitutes a burden inherent in every lease contract. Green v. Southern Furniture Company, La.App., 94 So.2d 508. As correctly argued by able counsel for appellants, ignorance or lack of knowledge of the vice or defect on the part of the lessor is no defense to the tenant's action. Mobry v. Frazier, La.App., 4 So.2d 556.
However stringent and harsh the foregoing rules of law may be, the landlord is nevertheless not the insurer of the safety of his tenant and he is not liable for injuries resulting from their inattention or lack of ordinary observation and care. Chaix v. Viau, La.App., 15 So.2d 662. The vices and defects contemplated in LSA-C.C. 2695 must be substantial and of such nature as are likely to cause injury to a reasonably prudent individual. Chaix v. Viau, supra.
In order for a lessee to recover from his lessor damages resulting from defects in the leased premises, the burden of proof rests upon the tenant to show by a preponderance of evidence that the premises were in fact defective as alleged and that such defect caused or contributed to the injuries received. Dunn v. Tedesco, 235 La. 679, 105 So.2d 264, 84 A.L.R.2d 1184, Curet v. Hiern, 95 So.2d 699.
Applying the foregoing principles to the case at bar we readily conclude Mrs. Morgan sustained an accident on the leased premises but unhesitating find she has failed to establish by a preponderance of evidence that it occurred because of a defective condition of the residence in question. Our careful analysis of her testimony reveals that in truth Mrs. Morgan was unaware of the cause of her fall.
The mere fact that an accident befalls a tenant of leased premises does not per se establish negligence on the part of a lessor. Neither does such occurrence constitute a prima facie showing the premises in question were defective or dangerous. Assuming, arguendo, our inclination *434 to conclude plaintiff's fall resulted from a patently dangerous condition of the leased premises upon the theory such determination were the only reasonable hypothesis herein, we could not so hold because plaintiffs have failed to establish by a preponderance of evidence that any existing irregularity in the steps was of such nature as to constitute a dangerous condition. See e. g. Kospelich v. New Amsterdam Casualty Company, La.App., 164 So.2d 68. It is of the utmost significance that not every defect will serve as the basis of a claim against one's lessor, but rather only such defects as one would reasonably expect to cause injury to a reasonably prudent person exercising ordinary care under the circumstances. Chaix v. Viau, supra, Curet v. Hiern, supra, Potter v. Soady Bldg. Co., La.App., 144 So. 183.
For the reasons hereinabove set forth the judgment of the trial court is affirmed at appellants' costs.
Affirmed.