CRAIN, Judge.
This suit involves a claim by Mrs. Nellie Webb Weiland against defendant G. Harold King, Jr., and his insurer, Continental Insurance Company for personal injuries she sustained in a fall on a stairway in a building owned by the defendant and being leased by him to the employer of petitioner, the Louisiana Department of Education.
The plaintiff’s accident occurred on October 16, 1967. She filed suit claiming damages for personal injuries on October 15, 1968. Houston Fire and Casualty Company, the compensation insurer of the Department of Education, intervened claiming reimbursement for compensation and medical benefits paid by it to plaintiff as a result of the accident. Plaintiff requested a jury trial and the case came on for trial on February 18, 1971. The jury returned a verdict in favor of plaintiff against the defendants, G. Harold King, Jr. and the Continental Insurance Company for the full sum of $25,000.00.
The record reveals that on October 16, 1967, plaintiff was employed by the Louisiana Department of Education who at that time was leasing the third floor of the building in question from the owner, G. Harold King, Jr. The building has since burned. It was located at the corner of Lafayette Street and Laurel Street in the City of Baton Rouge. Laurel Street and the portion of the building adjacent to it slopes downward from the intersection with Lafayette Street toward the Mississippi River so that the building when viewing it from Lafayette Street appears to have two stories, with one story being hidden below the Lafayette Street level. The Department of Education leased the third story level and the Department of Youth Opportunity leased the second floor level. The building had two entrances and exits, one, the front or main entrance, on Lafayette Street, and the other, a back entrance on the far side of the building on Laurel Street. Above this exit was a stairwell which consisted of two sets of stairs, the first leading from the ground floor at the exit on Laurel Street to a landing at the level of the second floor, and the second, leading from this landing to the landing on the third floor.
The Louisiana Department of Education entered into its lease covering the third floor of the building on February 11, 1966, with the then owner, Mr. Louis Welch. Mr. Welch subsequently sold the building *52 to the defendant, G. Harold King, Jr., the original lease between the Department of Education and Welch remaining in existence without alteration.
The accident in question occurred after normal working hours on October 16, 1967. Plaintiff, Mrs. Weiland, had been working late cleaning off her desk. She testified that several other employees were working on the third story level when she decided to leave. She started out toward the front entrance on Lafayette Street; however, she was halted by Mrs. Audrey George who was a supervisor employed by the Department of Education. Mrs. George advised her that the front door had been locked by Mr. Alex Eugene Langford, a supervisor also employed by the Department of Education, whose apparent job it was to be generally in charge of obtaining supplies and providing maintenance for the third story level. It was his duty to make sure that the front door was locked. The plaintiff then turned to leave the building through the back stairway which led to the exit on Laurel Street.
At the entrance to the exit from the third floor was a large door which swung open into the stairway landing. The plaintiff testified that she opened this door, traversed the first set of stairs, and upon reaching the second story landing found herself suddenly in complete darkness when the door closed behind her. She testified that she had used the stairway only twice since her employment one month prior to the accident to reach the third floor from the ground level, and had never descended the stairway at all. When she realized her predicament, she tried to call to Mrs. George who was on the third floor level, but her efforts met no success. Then she attempted to go down the stairway landing to the exit on Laurel Street, thinking that it would be less dangerous than going up the stairway toward the third story level. There were no railings on the second story landing although there were railings on the stairways themselves. In attempting to locate the railing to descend the stairway, she fell down the stairway, landing at the base of the stairway on the ground level.
Witnesses were produced by both plaintiff and defendants testifying to the general description of the stairway including the type steps, railing and lighting fixtures. The main lighting source for the stairway was three ordinary lighting fixtures, one fixture being located over each landing. The switch for the light fixture on the third level was just inside the office portion of-the third level, and was not in the stairwell or on the landing itself. The switch for the light on the second landing was inside the office area on the second level.
Plaintiff produced several witnesses to testify as to the dangerous nature of the stairway.
Audrey George, employed by the Department of Education as a Supervisor at the time of the accident, testified that in the past she had descended the stairway many times. She was accustomed to parking her car in the parking lot adjacent to the Laurel Street exit and it was a much shorter walk from the Laurel Street exit to her car than from the Lafayette Street exit. She stated that she had difficulty descending the steps because of the fact that except on rare occasions the lights were not burning. On the night of the accident, she was at work on the third floor when she heard noise on the ground level. She descended the stairway to see the cause of the commotion and found the plaintiff lying at the bottom of the:.landing and several other people attempting to render assistance. When she entered the stairway descending toward the plaintiff, none of the lights were burning, and she was only able to proceed down the stairway because the door on the ground level was open and some light was entering from outside. According to her testimony, the lights in the stairway were as a rule not burning and that she had reported this to the janitor. She'stated that the janitor complained that *53 she was unable to replace burned out bulbs because the lights on the ceiling were impossible for her to reach.
Mrs. Sophie D. Schopp had been employed by the Department of Education for several years at the time of this accident. She stated that she had used the stairway on one occasion and that the steps were rather irregular in depth causing her difficulty in descending.
Another employee of the Department of Education, Mrs. Karren Territo, testified that she was on the third floor level at the time of the accident. She further testified that she had complained about the lack of lighting on the stairway to her immediate supervisor, Mrs. George, but that she had never talked to the defendant.
Mr. Alex Eugene Langford, who testified on behalf of plaintiff, described the physical appearance of the stair as being “Ordinary steps”. He further stated that the steps were no different than any others “except when the lights were off it was dark, and sometimes they were off”. He testified that he had personally replaced the bulb in the light on the third floor fixture once at the request of the maid. The Department of Education, the lessee, paid for the maid and he in general supervised her activities. He testified that he had no particular difficulty in descending the stairway itself although he had only used the flight of stairs leading from the third floor to the second floor.
Mrs. McCormick, another employee of the Department of Education, testified that when the lights were on in the stairwell, “You could see where you were going”.
Mr. Wallace Lawrence Wagner, Manager of the Baton Rouge Youth Opportunity Center, testified that there was one light in the stairwell on the second story landing centered right above the landing. The switch to this light was located inside the building and the light could only be turned on or off from the inside. The offices of his department actually closed at 4:30 and the door to the back stairway was locked at that time. He stated that he had received complaints relative to the burned out light bulbs from employees in his office, and he had instructed his supervisors to replace them as they burned out. His testimony revealed that in his opinion the stairways were “good” stairways except for what he termed dim lighting. When questioned about janitorial services, he stated that his office contracted with a janitorial agency and that he never knew for certain whether or not his office had any responsibility for janitorial services in the stairway itself, remarking that he took it upon himself to replace the bulbs and kept bulbs on hand for that purpose.
Defendants produced witnesses who testified that they had examined the building and more specifically the staircase involved and that the steps and railing in the stairway were in all respects adequate and the lighting facilities provided sufficient lighting for safely negotiating the stairs.
Mr. Louis Welch, the original Lessor, testified that the buildings had been inspected after he remodeled it prior to its sale to defendant and that the lighting system had passed inspection. He also stated that he had at one time at the insistence of Mr. Wagner, placed a tube light in the stairway to illuminate more fully the steps at the bottom. He further stated that on each level next to the door providing entrance to the stairway there were red exit lights which were square lights with “Exit” written on them. There were no switches to these lights which were designed to burn constantly. When questioned about the lease he signed with the Department of Education, he stated that he insisted upon the Lessee agreeing to provide janitorial services and that he believed this eliminated his obligations as far as changing lights.
Plaintiff argues that based on the above outlined facts the jury’s verdict is supportable in law by Civil Code Article 2695, Civil Code Article 2322, or Civil Code Articles 2315 and 2316.
*54 Article 2695 provides, in part, as follows :
“The lessor guarantees the lessee against all the vices and defects of the thing . . . and if any loss should result to
the lessee from the vices and defects, the lessor shall he bound to indemnify him for the same.”
This article by its language imposes strict liability on the part of the lessor to the lessee for damages to the lessee from vices and defects in the leased premises.
Article 2322 provides:
“The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.”
This Article sets forth the basic liability of a lessor to a third person, other than a lessee, caused by some vice in the premises. It too has been interpreted to impose standards approaching strict liability on the part of a lessor to a third person. Due note of this was taken by this Court in Te-soro v. Abate, 173 So. 196, at page 202 (La.App.1937), wherein it was stated that:
“It is true that the jurisprudence of this state has broadened the language of articles 670 and 2322 of the Code to such an extent that the owner of a building practically insures any third person, rightfully on the premises, against injury caused by the vices or defects of the building due either to construction or failure to make repairs. And this is so even though the property is in possession of a tenant and the owner is not acquainted with the fact that some of the appurtenances of the building are in need of repair.”
Article 2315 of the Civil Code contains the basic rule of liability based on fault providing that:
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”
Article 2316 extends this liability for:
“damage he occasions not merely by his act, but by his negligence', his imprudence, or his want of skill.”
Taking the facts presented to the jury herein and interpreting them in a way most favorable to the plaintiff we do not believe the jury could correctly impose liability on the defendants under any of the above cited Code Articles.
We have outlined the testimony of the witnesses presented to show that the stairway was dangerous because of its construction, and insufficient lighting. The salient fact which is presented, however, is that regardless of whether the lighting was sufficient if in full use, or whether the stairs were too steep or too narrow, the accident occurred when plaintiff reached the landing on the second floor and found herself in total darkness. The construction of the stairs did not cause her fall. Insufficient lighting fixtures did not cause her fall because according to her testimony there was no lighting at all. The placement of the switches for the lights did not cause her fall because she made no attempt to turn on the light in the stairwell on the top floor before entering it. The placement of the switch on the second floor landing would have no bearing on her fall had she used the switch available to her at the top. Additionally she testified that she did not know where the switches were located in any event.
If the sufficiency of the lighting fixtures, the location of the light fixtures, the location of the light switches, and the construction of the stairs themselves could, by the most liberal interpretation be considered defects within the meaning of Articles 2695 and 2322, such defects were not the cause of the accident. We noted this requirement in dealing with Article 2695 in the case of Morgan v. American Indemnity Company, 180 So.2d 429 at 433 wherein we stated:
“In order for a lessee to recover from his lessor damages resulting from defects *55 in the leased premises, the burden of proof rests upon the tenant to show by a preponderance of evidence that the premises were in fact defective as alleged and that such defect caused or contributed to the injuries received (emphasis supplied.) Dunn v. Tedesco, 235 La. 679, 105 So.2d 264, 84 A.L.R.2d 1184, Curet v. Hiern, 95 So.2d 699.”
Assuming that the light switches were on and that plaintiff did in fact find herself in total darkness on the second landing, which would be a fact finding most favorable to the plaintiff, the only conclusion that can be- reached as to the cause of the total darkness is that the bulbs in the fixtures were burned out. Taking this as the cause of the accident Articles 2695 and 2322 immediately become inapplicable.
With reference to Article 2322 the Louisiana Supreme Court held in Davis v. Royal Globe Insurance Companies, 257 La. 523, 242 So.2d 839 at 841, 842 that:
“The 'ruin’ contemplated by this Article has reference to the actual fall or collapse of a building or one of its components. This is the attitude in the French law and it is a view expressed in Guidry v. Hamlin, 188 So. 662, 664 (La.App.Orl.1939), where the Article was said to have ‘no reference to any situation except that in which some part of the building collapses, or breaks, or gives way.’ . . .”
In Caulfield v. Saba, 144 So. 907 (La.App.Orl., 1932), it was held that 2695 imposes no obligation on the part of the lessor to illuminate passages. Even though the lessor here assumed the obligation of furnishing adequate lighting in certain specified instances, the lessee assumed the obligation of furnishing janitorial services. The mere changing of a lightbulb obviously falls within the latter definition, c.f. Civil Code Articles 2694, 2695, 2716.
The findings as to causation, and the lack of any duty on the part of the lessor to replace bulbs, especially when there is no evidence to show that the lessor had any notice of burned out bulbs, precludes a finding of negligence under Articles 2315 or 2316.
Accordingly the verdict of the jury is reversed and set aside and judgment is rendered in favor of defendants-appellants, rejecting the demands of plaintiff-appellees. All cost to be paid by plaintiff-appellee. The intervention is likewise dismissed at intervenor’s cost.
Judgment reversed and rendered.