288 So.2d 660 (1974)
Mary I. TEMPLIN, Plaintiff-Appellant,
v.
TRADERS & GENERAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 4404.
Court of Appeal of Louisiana, Third Circuit.
January 25, 1974.
*661 William Henry Sanders, Jena, for plaintiff-appellant.
Falkenheiner & Calhoun by W. C. Falkenheiner, Vidalia, and Roy S. Halcomb, Ferriday, for defendants-appellees.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This suit involves an action brought by a tenant against her landlord, his alleged insurer, and an adjacent property owner for injuries which she claims were incurred as a result of a "slip and fall" at the front entrance of the leased premises. The *662 named insurer of the landlord, Traders & General Insurance Company, was dismissed as a party as of nonsuit, and the case continued against the landlord and the adjoining property owner. After trial, the district court ruled in favor of the defendants, thereby dismissing plaintiff's action. The plaintiff prosecuted this appeal.
The facts of the case are as follows: The plaintiff, Mrs. May I. Templin, and her five children were residing at 706 Louisiana Avenue in Ferriday, Louisiana, on the date of the accident. The small six room wooden house is owned by one of the defendants, the Estate of J. L. Calhoun. This residence has a large wooden front porch with prefabricated concrete steps leading to a private sidewalk. Both steps and sidewalk are evidently solid and well constructed. On the adjoining and abutting property is located the Park-N-Wash Washateria, owned by the other defendant in this action, Haywood Simonton. Midmorning on December 3, 1971, the plaintiff, as she was leaving the aforementioned residence to go to work, allegedly slipped and fell while traversing the last step of her tenant house to the sidewalk.
Plaintiff maintains that her fall and resulting knee injuries were by reason of an accumulation at the foot of the concrete steps of mud and slime mixed with lint particles emitted from the adjacent washateria. She asserts that the elevation at the foot of the steps is substantially lower than the surrounding ground level thereby constituting a vice or ruin in the construction of the premises. She claims that because of such vice or ruin, normal rains would create a dangerous and hazardous condition at the entrance of the building by accumulating the mud and materials at the foot of the steps. Finally, she alleges that such accumulation was given further slippery and dangerous propensities by being mixed with the lint emitted from exhaust pipes at the adjacent washateria.
Immediately after the fall plaintiff testified she thought she had only knocked her knee "out of place" and was helped back into the house where she changed her partially muddy and wet clothes and thereafter went to work. However, by plaintiff's testimony she was unable to finish her shift at the restaurant where she worked because of pain.
Plaintiff testified that subsequently she was examined and treated by approximately eight different doctors. This allegedly included three hospital admittances, including one fifteen-day stay for knee surgery. Plaintiff attempted at trial to introduce the medical records and charts of the Huey P. Long Memorial Hospital regarding her hospital visits, however, this evidence was deemed inadmissible by the trial court, but was permitted under a proffer of proof. The trial court deemed the evidence inadmissible by reason of the fact that the certifying official was the "medical records administrator" rather than one of the listed certifiers under LSA-R.S. 13:3714.
In addition the trial court found no strict liability or negligence on the part of either of the defendants, that there was a "natural" drain across plaintiff's leased premises, and that the fall "probably aggravated" the plaintiff's former knee condition.
The plaintiff, in effect, cites two specifications of error on the part of the district judge:
(1) In not holding that the "medical records administrator" was a proper official to certify the hospital records and render them admissible in evidence, i. e. that the listing in LSA-R.S. 13:3714 is not exclusive.
(2) In not holding the owner-lessor of the tenant house and the adjoining landowner to strict liability for the personal injuries sustained by the plaintiff.
The defendants assert the correctness of the trial court judgment and argue in the alternative contributory negligence on the part of the plaintiff.
*663 We will first consider whether strict liability theory is applicable to our factual situation.
In her petition plaintiff alleges initially that the owner-lessor of the residence is held to strict liability by reason of the defective condition of the leased premises.
This alleged liability is predicated upon LSA Civil Code Article 2695 which provides:
"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
In order for a lessee to recover damages from his lessor because of an alleged defect, vice, or condition in the leased premises, the burden of proof rests upon the tenant to show by a preponderance of the evidence that the premises were in fact defective as alleged and that such defect caused or contributed to the injuries received. Dunn v. Tedesco, 235 La. 679, 105 So.2d 264 (1958); Morgan v. American Indemnity Co., 180 So.2d 429 (La.App. 1st Cir. 1965); Weiland v. King, 262 So.2d 50 (La.App. 1st Cir. 1972).
Applying the foregoing principles to the case at bar we readily conclude the plaintiff sustained a fall on the leased premises but also find as did the trial court that Mrs. Templin has failed to establish by a preponderance of the evidence that it occurred because of a vice or defect in the residence in question. We feel the alleged condition at the foot of the steps did not constitute a "vice or defect" as contemplated under Article 2695.
Plaintiff herself testifies that the porch, steps, and sidewalk were all solid and sound. This was verified by other witnesses. Thus the residence was constructed in a normal manner. Instead she alleges that a vice or defect existed by reason of the fact that the walkway level was substantially lower in elevation than the surrounding area, thereby creating a trap at the bottom of the steps whenever rain fell. However, the trial court found that there was a natural drainage crossing at the foot of the steps. In addition the photographs introduced by both plaintiff and defendants clearly indicate to this court that the alleged accumulation of water and other materials at the foot of the steps was minimal in nature. In addition plaintiff's own witness testified the elevation deviation was very very minor.
In addition even if we had concluded that plaintiff's fall resulted from a vice or defect of the leased premises we could not hold the defendant liable because plaintiff has failed to prove by a preponderance of the evidence that the alleged vice or defect was of such a nature to constitute a dangerous condition. For not every defect will serve as the basis for a claim, but only a substantial defect which would reasonably expect to cause injury to a reasonably prudent person exercising ordinary care under the circumstances. Anslem v. Travelers Ins. Co., 192 So.2d 599 (La.App 3rd Cir. 1966); Morgan v. American Indemnity Co., supra.
In the instant case we do not think the defendant-landlord should have reasonably expected one to fall in the questioned area, especially considering that the prior tenant, an elderly, semi-crippled woman, used this access daily.
Plaintiff additionally alleges strict liability on the part of the adjoining landowner, Simonton, under LSA-C.C. Article 666 et seq. It is her contention that through the emission of lint materials onto the property in question a dangerous condition was created on the plaintiff's leased premises.
This is a factual issue; the trial judge denied the application of strict liability on the facts and we concur in the result.
*664 A property owner has the right to conduct on his property, any lawful business not per se a nuisance so long as the business is so conducted that it will not unreasonably inconvenience or cause injury to a neighbor in the reasonable use of his property. Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816 (1947); Bankston v. Farmers Cooperative Gin of Winnsboro, 116 So.2d 91, (La.App. 2nd Cir. 1959); LSA-C.C. Article 666 et seq.
But it is elementary that the plaintiff must prove by a preponderance of the evidence that the alleged instrumentality [lint herein] did in fact cause the damage. Watson v. Mid-Continent Aerial Sprayers, Inc., 170 So.2d 149 (La.App. 2nd Cir. 1965).
The plaintiff herein did not prove that the emission of lint, which the record indicates was very minute in accumulation, onto the leased premises caused or even contributed to plaintiff's fall, and she therefore has not carried her burden of proof by the preponderance of the evidence.
Thus we must turn to negligence theory under LSA-Civil Code Articles 2315, 2316. We however observe that allegations of negligence of the defendants would be of no importance if plaintiff herself is guilty of negligence constituting a proximate cause of the accident. Turner v. Aetna Casualty & Surety Co., 175 So.2d 304 (La. App. 2nd Cir. 1965).
By plaintiff's own testimony, she had been a tenant at the premises for approximately four months and acknowledged that the alleged described conditions had been the same throughout the entire period in which she had resided there. She stated not only that she knew of the accumulations of water and material at the bottom of the steps every time it rained, but also that her family often shoveled or swept this debris away after it accumulated.
Thus the condition allegedly causing the "slip and fall" was very obvious to the plaintiff. In addition she is to be charged with the knowledge that one is apt to slip upon a wet surface, and more so upon one which also has an accumulation of mud and other materials. It should be indicated to a reasonably minded person using ordinary observation and care, that stepping into such an accumulation of water and mud presents certain hazards. This is further buttressed by the fact that plaintiff knew she had a weak knee because of a prior injury, and by her own testimony that she favored the knee allegedly injured. Under these circumstances it would seem that plaintiff should have taken more care in traversing the steps.
Accordingly, we feel that the plaintiff was guilty of such negligence which constituted a proximate cause of the accident, thereby barring her from recovery. See Franklin v. Fireman's Fund American Ins. Cos., 212 So.2d 494 (La.App. 2nd Cir. 1968); Bersuder v. Employers Liability Assurance Corp., 210 So.2d 525 (La.App. 4th Cir. 1968). She failed to take the ordinary precautions in view of these alleged conditions which plaintiff was well aware of and which were often present in an area she used daily for over four months.
In view of our conclusion absolving the defendants of liability, we deem it unnecessary to consider the issue raised by appellant concerning the admissibility of the hospital records.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant's costs.
Affirmed.