95 So.2d 699 (1957)
Mrs. Elizabeth CURET
v.
Charles H. HIERN et al.
No. 20839.
Court of Appeal of Louisiana, Orleans.
May 13, 1957.
Rehearing Denied June 24, 1957.
Writ of Certiorari Denied October 8, 1957.
*700 M. C. Scharff and Tucker & Schonekas, New Orleans, for plaintiff and appellee.
Michael J. Molony, Jr., Jones Walker, Waechter, Poitevent & Denegre, New Orleans, for defendants and appellants.
McBRIDE, Judge.
Plaintiff filed this suit in the Twenty-fourth Judicial District Court for the Parish of Jefferson against Charles H. Hiern and his liability insurer, Liberty Mutual Insurance Company, seeking to recover damages for injuries allegedly sustained as a result of her fall down a stairway, claimed to be defective in design and construction, located in the interior of a two-apartment building owned by Charles H. Hiern.
The petition and the supplemental and amended petition allege, in substance, that plaintiff's son-in-law and daughter were lessees of Hiern, the owner of the upper apartment identified by Municipal No. 2409 Leonidas Street; that plaintiff lives with them; that they moved into the apartment about December 1, 1951. On December 5th plaintiff was awakened in the early morning hours by the sound of wind and rain, and upon hearing a noise which sounded like the downstairs door slamming, she arose from bed intending to proceed down the stairs to close the door; that she opened an upstairs door and in "attempting to step on what she thought to be a landing, she fell completely down the front stairs." Plaintiff charges that the stairway is defective in several respects and not in conformity with the Building Code of New Orleans, and that her fall was caused thereby.
Defendants interposed an exception of no cause of action which was overruled by the trial court. Then answering they deny plaintiff was injured as a result of a fall on the stairway and also denied that the stairway was defective either in design or construction or that the alleged defects caused plaintiff to fall. They affirmatively aver that the stairway was constructed in accordance with the usual and customary standards prevailing in the City of New Orleans and in compliance with the New Orleans Building Code, and that the sole and proximate cause of the accident was plaintiff's own negligence in failing to pay proper heed while approaching a stairway and in failing to use the usual and ordinary care requisite when one descends a stairway. In the alternative, defendants plead that plaintiff was contributorily negligent in these respects.
On these issues the matter proceeded to trial in the lower court and judgment was rendered in favor of plaintiff awarding her $6,500 for physical injuries and future *701 medical expenses, from which judgment the defendants have prosecuted their devolutive and suspensive appeal which has been answered by plaintiff who prays that the amount of the judgment be increased to the sum of $10,000.
No one, save plaintiff, was present when the accident happened and her narration of the occurrence stands alone. Rather than paraphrase her testimony, we quote it verbatim:
"Q. Now, on the night of the accident or the early morning of the accident, did you get out of bed? A. Well, there was a storm come up about two-thirty, I think.
"Q. About two-thirty in the morning? A. Yes, and I got up to go and put the window down. The rain was coming in.
"Q. In your room? A. In our room, yes, and so I heard the door slamming.
"Q. What door? A. Downstairs.
"Q. The downstairs door? A. Across the hall, you know, and I said, `Well, I will go.'
"You know, lock it up. So, when I got to the door, it just opened. No lock, no nothing and I just went right on down and that was the last I ever knew."
And again plaintiff testified:
"I thought it was there but it was the one that was pounding on top. You see, we were there three days and whenever I touched the door there, I went down. There was no lock, no locks on the door."
For the third time plaintiff described in similar terms how the accident happened, as shown by the following testimony:
"Q. Did you say that when you started to fall, what did you do when you realized you were falling? A. I just went down. I didn't know anything, not a thing."
On cross-examination she was questioned as to her explanation of the fall as compared with the allegations of her petition, and her testimony appears thus:
"Q. And you said that according to the statement in your petition here, that you assumed there would be a landing there and you stepped out, is that right? A. No, whenever I took the door this way, and I just went right on down, because there was no lock. I thought the door was locked."
The upstairs door Mrs. Curet alludes to is situated in a hall between the dining room and living room and this area was in darkness, or as the plaintiff put it, there were "no lights nowhere." Some contention is made that the hallway was sufficiently illuminated by the bedroom light, but we do not believe this to be a fact; at least it cannot be squared with Mrs. Curet's statement that there were no lights. Plaintiff made no attempt to switch on the light above the stairway door through which she says she fell.
No claim is made that any portion of the stairs broke, crumbled or gave way, and the ground of complaint is that the staircase was unsafe by virtue of its peculiar design, the alleged structural defects being, viz.: that the door should not have opened into a stairwell without a landing or platform; that a handrail was lacking; the flight of steps was entirely too steep; and that the individual steps, which were too narrow, varied in height and width.
Some controversy exists over which particular articles of the LSA-Civil Code have application to the case670, 2315, 2322, 2692, 2693 or 2695but a discussion thereof is unnecessary in view of our conclusion as to the negligence vel non of the property owner.
Our concern is whether Hiern, the owner and lessor, was guilty of actionable *702 negligence in maintaining the stairs in his premises. Any question of the steepness thereof, or the narrowness, or the disparity in the width and height of the component steps may be eliminated from discussion and consideration of these defects, if they actually existed, can play no part in the case because plaintiff does not attribute her fall thereto, and it does not appear that the accident was caused thereby. If the defendants are liable for plaintiff's damages, it must not only be shown that the premises were defective but that the defects were the proximate cause of the injuries.
Plaintiff attempted to show that the stairway is unsafe from an architectural point of view and that the manner of construction thereof is in direct violation of the Building Code of New Orleans. Maxwell, a licensed architect, testified, and Markey, who investigated the premises on behalf of defendants, stated in writing that the opening of the upper door directly onto a flight of stairs created a hazard. Maxwell insisted that a landing or platform having a width equal to the door should have been provided and further there should have been handrails to enable a person to maintain equilibrium in ascending or descending. Maxwell went so far as to assert that this is violative of the New Orleans Building Code (Ordinance 17,525, C.C.S.) adopted December 17, 1948, of which he claims co-authorship. He stated that his opinion, and that entertained by a majority of those whose duty it is to enforce the ordinance, is that certain articles, which he referred to by number, would have application to the premises in question.
The argument is made that we should adopt Maxwell's construction of the provisions of the ordinance under the principle of law that rulings of administrative officials charged with the interpretation of their own regulations carry great weight and are usually followed by the courts.
We have made careful analysis of the portions of the Building Code brought into question, and it seems clear, notwithstanding Maxwell's contrary opinion, that the ordinance does not by any of its provisions regulate the general design, style, or requirements for stairways, or landings or platforms, or railings thereon in two-family or duplex dwellings. By art. 103 of the Building Code a building designed for or occupied exclusively by two families is a "Two family dwelling," and by the provisions of art. 1401 "dwellings" are classified as "Group 1 Occupancies." In art. 3301 et seq., Chapter 33, it is stated: "The provisions of this Chapter shall not apply to Group 1 Occupancies except as specifically stated * * *." Nowhere in Chapter 33, which governs stairs and ramps, is there any indication that Group 1 Occupancies are brought within the purview of the provisions of any of the articles of said chapter.
No ambiguity exists in the pertinent provisions of the Building Code, and therefore there is no room to admit the construction given them by Maxwell. No contemporaneous construction is necessary to aid the court and such would be irrelevant where the language of the ordinance is free from doubt. Gulf Shipside Storage Corporation v. Thames, 217 La. 128, 46 So.2d 62; Liquidation of Canal Bank & Trust Co., 211 La. 803, 30 So.2d 841; State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601.
Some attempt was made to show that Ordinance 17,525, C.C.S., has since been amended and that its provisions presently require that stairways in duplex dwellings be equipped with landings and handrails and that the opening of doors into stairwells is prohibited. The amendments to the ordinance, if any, have no retroactive effect. The erection of the stairway was governed by the provisions of the then prevailing ordinance. Gosselin v. Stilwell, La.App., 78 So.2d 235; Boucher v. Paramount-Richards Theatres, Inc., La. App., 30 So.2d 211; DeLatour v. Roosevelt Hotel, Inc., La.App., 1 So.2d 353.
*703 While the style and design of the stairway might not comply with present-day architectural or regulatory standards, this would not be sufficient to say that the premises were defective or that a trap existed. The stairway, as the record describes it, seems to be of a type not uncommon in the vicinity of New Orleans and particularly in many older buildings. If we were to hold that there was a trap in the premises, then we would in effect be condemning stairways in thousands of dwellings and buildings in this locality. There is no element of a trap, nothing was hidden, concealed, or which could not have been seen by a person using a minimum of precaution. Plaintiff has fallen short of proving that any defect in the premises was responsible for her injuries and hence she cannot be successful in her demands. It was incumbent that she make such showing. See Burch v. Mathson, La.App., 26 So.2d 230; Dugas v. Mayer, La.App., 179 So. 607; Castain v. Lograco, La.App., 152 So. 153; Potter v. Soady Bldg. Co., Inc., La.App., 144 So. 183; Cosey v. Scott, 17 La.App. 680, 137 So. 361. This court said in Boudro v. United States Fidelity & Guaranty Co., La.App., 145 So. 294, 295:
"The law is clear that the landlord is not responsible for any injuries that a tenant, or any one lawfully in the premises, may have sustained as a result of a fall, unless the fall was caused by a vice or defect in the premises. The mere fact that a tenant fell and was injured in leased premises does not raise any presumption of negligence on the landlord's part, or that he failed to keep the building in a proper state of repair."
In Landry v. LeBleu, La.App., 172 So. 19, 20, a case involving a fall down stairs in a rented building, the Court of Appeal for the First Circuit held:
"In order for plaintiff to recover, it is necessary for her to prove two things: First, that she fell on the steps of this rented house and that this fall was caused from some defect in the steps; second, that she was injured by the fall and, if so, the extent of these injuries."
After arising from bed plaintiff most probably was in a sleep-ladened condition and thoughtlessly moved about the darkened hallway. She could have turned on the light which would have illuminated the stairwell, but unfortunately she failed to do this. Then in the darkness she opened the door although professing she had never before attemped to use the stairway and it was entirely unfamiliar to her. We believe her conduct in proceeding through the door into total darkness was a most imprudent thing to do, and the case must fall within the "step in the dark" principle. This rule of law is thus stated in 1 Shearman & Redfield on Negligence, page 320:
"A person who comes into an unfamiliar situation, where a condition of darkness renders the use of his eye-sight ineffective to define his surroundings, is not justified, in the absence of any special stress of circumstances, in proceeding further, without first finding out where he is going and what may be the obstructions to his safe progress. Violation of that rule is contributory negligence as matter of law."
In Fahey v. Sayer, 9 Terry 173, 48 Del. 173, 99 A.2d 624, 625, the plaintiff was held contributorily negligent as a matter of law in entering a darkened doorway, notwithstanding the fact that there was sufficient light in the hallway on which the door opened. The plaintiff had occasion to seek use of the lavatory in defendants' premises and went into a rear hall from which there were several doors, including doors leading to the kitchen, a den and a utility room. There were three other doors similar in appearance and structure except for one leading to a cellar stairway and it was distinguished by a bolt and a chain which was open at the time. Plaintiff went to the door leading *704 onto the cellar steps, opened the door and reached her hand to see if she could find a light switch and, as she describes the accident "away I went down on my back to the bottom of the stairs." The lower court directed a verdict for defendants and held plaintiff contributorily negligent as a matter of law. The appellate court affirmed the action of the lower court saying:
"* * * The impenetrable darkness which confronted her when she opened the door leading to the cellarway was sufficient warning not to attempt to use it except at her own risk. * * *"
See, also, Biggs v. Bear, 320 Ill.App. 597, 51 N.E.2d 799; McHenry v. Howells, 201 Or. 697, 272 P.2d 210.
This court has had occasion to apply that particular principle of law in the case of Briscoe v. Bailey, La.App., 74 So.2d 770, 771, holding the plaintiff to be negligent for entering a darkened doorway in unfamiliar premises. There plaintiff's brother had rented a room and bath from the defendants on the second story of the premises. The room and bath each had a door opening onto a gallery which ran toward the rear of the premises where a louver door leading to a common toilet was located. Plaintiff, visiting her brother one night, inquired as to the location of the toilet and was instructed to go to the rear end of the gallery where she "would come to a door, and push it open and walk in there." There was very little light on the gallery. Plaintiff instead of going to the last door, opened the door leading to the platform of a descending stairway, entered the door in the darkness and fell down the stairway. This court affirmed the judgments of the lower court, which dismissed plaintiff's suit and said:
"* * * The plaintiff, wholly unfamiliar with the premises, opens a closed door revealing, according to her own testimony, nothing but darkness into which she imprudently advances and falls down the stairway. It was her own negligence that caused her mishap."
This case is dissimilar to Fischer v. Dufresne, La.App., 192 So. 109. The facts in that case were that a customer was injured by falling in attempting to step down from a poolroom to a barroom because the wooden steps which had been in place twenty minutes before had been moved in order to permit a porter to sweep under them, and warning was not given until almost simultaneously with the fall. The court held that the plaintiff was not guilty of negligence because he did not know that the steps were movable and had no prior notice that they had been moved.
Carefully studying the testimony of plaintiff, we gain some impression that she leaned against the door which she thought to be locked, falling through and down the stairs when the door yielded to her touch. Several times she stated: "I touched the door there, I went down. There was no lock, no locks on the door."
If there was any negligence in the case it certainly was not on the part of the property owner, and the trial judge erred in rendering the judgment appealed from.
The large number of cases involving persons who fall down stairs and attempt to recover damages for their injuries from the owner or occupant of the premises provoked comment from the writers of Shearman & Redfield on Negligence. In Vol. IV, Sec. 797, page 1820, we find:
"It is not uncommon for a person to fall down stairs when there is no defect in the stairway or its covering. A heel may catch on the edge of the stair, or the carpet, and a fall results. The fault rests, not with the stairway, but with the person who so placed his foot. Too often, the accident having so happened, such a person *705 seeks a `defect' through which to pin upon another the damage flowing from his own lapse. The frequency of that situation led one justice, during argument of an appeal, to make the ironic comment that `They always find it.'"
This court in Denneker v. Pecoraro, La. App., 64 So.2d 510, 515, in affirming dismissal of plaintiff's demand for damages alleged to have resulted from a fall down stairs, stated:
"We quote with approval from S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 175, 58 A.L.R. 132, as follows:
"`Not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from some one. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured. * * *'"
In Knight v. Travelers Ins. Co., La.App., 32 So.2d 508, 512, the First Circuit Court of Appeal quoting from Davis v. Buss Machine Works, 169 Mich. 498, 500, 135 N.W. 303, 304, said:
"`It has long since been recognized that falling downstairs, where the mishap was not imputed to unknown or concealed defects, belongs to that class of ordinary accidents which ought to be imputed to the carelessness or misfortune of the sufferer.'"
For the reasons assigned, it is now ordered, adjudged and decreed that the judgment appealed from be reversed and plaintiff's suit is dismissed at her cost.
Reversed.