643 So.2d 345 (1994)
Marjorie KESSLER, Plaintiff-Appellee,
v.
SOUTHMARK CORPORATION, et al., Defendants-Appellants.
No. 25,941-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1994.
*347 Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for appellants.
Carl Rice and Associates by William F. Kendig, Shreveport, for appellee.
Before SEXTON, NORRIS and VICTORY, JJ.
SEXTON, Judge.
In this tort case, defendants, Southmark Corporation and its insurer, Birmingham Fire Insurance Company, appeal a jury verdict in favor of the plaintiff, Marjorie Kessler, finding defendant 60 percent at fault in creating an unreasonably dangerous condition on the premises it owned and leased to plaintiff, and awarding plaintiff general and special damages. Plaintiff answered the appeal, urging that the general damage award for past and future pain, suffering, mental anguish, and distress is abusively low. We affirm.
The accident occurred on the evening of November 9, 1989, when the plaintiff and some of her business associates went to a kitchen located down the hall from the offices leased by plaintiff. The kitchen was not under lease, but had been used off and on by the plaintiff or her fellow employees for various purposes. On the night in question, the group went to the kitchen to discuss using that place for a Thanksgiving party.
The kitchen had two entrances. One door opened to the kitchen from the hallway, while the other entrance was a double door connected to the dining room opposite the hallway door. Ms. Kessler and her group went to the kitchen via the hallway.
There was no light switch adjacent to the hallway door. The only light switch was located on the left side of the double door opposite the hallway door. Ms. Kessler knew the location of the light switch and volunteered to turn the lights on. Testimony indicated that the room was pitch black with little light available from the poorly-illuminated hallway. In the center of the room was an island, also familiar to Ms. Kessler.
As Ms. Kessler proceeded across the room in a direction that would take her around the right side of the island, she tripped over two bookshelves laying face up on the floor. Unbeknownst to Ms. Kessler and the others, the shelves had been stored in the kitchen by workers who were remodeling some office space on the same floor of the building. One witness described the sound of the accident as going on and on as if it would never stop. Ms. Kessler testified that she repeatedly attempted *348 to catch herself only to fall again and again and again.
Ms. Kessler alleged that as a result of the fall, in addition to numerous minor injuries (cuts and bruises, etc.), she contracted fibrositis or fibromyalgia. The jury found in her favor, but assessed her with 40 percent fault. Damages were awarded as follows:

a. Past medical damages $ 14,861.99
b. Future medical damages $ 35,000.00
c. Past lost wages $ 96,000.00
d. Future lost wages and earning ability $263,000.00
e. Past pain and suffering $ 50,000.00
f. Future pain and suffering $ 25,000.00
 ___________
 TOTAL DAMAGES $483,861.99

Defendants appeal, asserting several assignments of error. First, defendants contend that the percentage of fault assessment (40 percent to plaintiff, 60 percent to defendants) by the jury was clearly wrong because the plaintiff should not have been in the kitchen area. They further argue that pursuant to a proper jury instruction, the plaintiff would have been found 100 percent at fault in this case based upon the "step-in-the-dark" rule, a rule of contributory negligence barring recovery of a plaintiff who sustains an injury by imprudently entering a dark and unfamiliar place. Next, defendants claim that the jury erred in awarding $35,000 to plaintiff for future medical expenses and $96,000 for past lost wages. Finally, defendants assert that the court erred in an evidentiary ruling allegedly allowing plaintiff's expert to rely on income tax returns not introduced into evidence in connection with his testimony which, defendants argue, resulted in an unreasonable award for loss of future earnings and earning capacity.
The plaintiff answered the appeal urging that the general damage award for past and future pain, suffering, mental anguish, and distress is so low that it constitutes an abuse of discretion.
Because defendants' argument that the jury erred in its fault assessment is based primarily on the assertion that the court erred in failing to give a jury instruction reflecting the so-called "step-in-the-dark" rule, we will discuss the jury instruction issue in the context of the larger question of whether the jury erred in its fault assessment.
Prior to jury deliberations, both parties submitted proposed jury instructions to the court. Included among those proposed by the defendant was the following instruction:
A person who comes into an unfamiliar situation, where a condition of darkness renders the use of his eyesight ineffective to define his surroundings, is not justified, in the absence of any special stress of circumstances, in proceeding further, without first finding out where he is going and what may be the obstructions to his safe progress. Violation of that rule is contributory negligence as a matter of law. Curet v. Hiern, 95 So.2d 699 (Orl.App.1957).
The court refused to read this instruction to the jury, stating that to do so "would be tantamount to a comment on the evidence by this Court, which is strictly prohibited by the code of evidence and all of the law that applies to jury trials." The court did give counsel for defendant permission, however, to argue the point of the proposed instruction in closing argument. Defendant now claims that the jury erred in assessing the plaintiff with only 40 percent fault and attributes that error, in large part, to the court's failure to read the proposed jury instruction. We disagree.
The proposed instruction is a passage taken from the case of Curet v. Hiern, 95 So.2d 699 (Orl.App.1957). In that case, an occupant of a rented apartment sustained injuries when she fell down a dark, unfamiliar stairway after being awakened in the night by a storm. She sued the owner of the building alleging that the stairway was defective and the defect caused her fall. Plaintiff had moved into the apartment with her daughter and son-in-law only a few days before and was not familiar with the design of the stairway, which had no landing prior to its descent directly from the doorway opened by the plaintiff on the night of the fall. She simply stepped into the darkness and tumbled down the stairway. Plaintiff claimed the accident would not have occurred but for the faulty design of the stairway which did not have a landing at the top of the stairs. The court rejected the plaintiff's demands, applying the step-in-the-dark rule quoted above. Subsequent to Curet v. Hiern, our *349 courts applied the step-in-the-dark rule on occasion under suitable facts. See, e.g., Foggin v. General Guaranty Insurance Company, 186 So.2d 665 (La.App. 2d Cir.1966); Mahfouz v. United Brotherhood of Carpenters, Etc., 117 So.2d 295 (La.App. 2d Cir. 1959); Cooper v. Phoenix Insurance Company, 252 So.2d 565 (La.App. 4th Cir.1971).
In cases far more numerous than Hiern and its limited progeny, our courts have applied the general principle underlying the step-in-the-dark rule, which is that a person has a duty to prudently observe the conditions that surround him and to act reasonably. An injury resulting from a person's failure to act in accordance with this principle constitutes contributory negligence. Of course, until the last decade, contributory negligence barred any claim for damages the tort victim may have had. Defendant concedes, in fact, that Hiern and the cited cases were all decided before the advent of the comparative fault regime in Louisiana. Nevertheless, defendant submits that the step-in-the-dark rule should have been included in the jury instructions because "such a charge would cause a burden on the plaintiff to prove even more strongly a breach of duty by a landowner."
Ordinarily, factual findings of the jury are accorded great weight and may not be disturbed by the appellate court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stovall v. Shell Oil Co., 577 So.2d 732 (La.App. 1st Cir.1991), writ denied, 582 So.2d 1309 (La.1991). However, when the jury verdict is based on instructions which are faulty in a critical regard, the verdict is tainted and not entitled to a presumption of regularity. Dupuy v. Rodriguez 620 So.2d 397 (La.App. 1st Cir. 1993), writ denied, 629 So.2d 352 (La.1993); Stovall, supra. On the other hand, adequate jury instructions are those that fairly and reasonably point up the issues and provide correct principles of law for the jury to apply to those issues. Dupuy, supra. The pertinent inquiry in making a determination whether a jury verdict should be overturned on the basis of an erroneous jury instruction is whether the jury was misled to such an extent that it was prevented from doing justice. Hickman v. Albertson's, Inc. 598 So.2d 1128 (La.App. 2d Cir.1992), writ denied, 600 So.2d 618 (La.1992).
Although the court refused to read to the jury the step-in-the-dark rule, the court adequately instructed the jury on the principles of comparative negligence and the allocation of percentages of fault should the jury find victim fault. It is our view that the step-in-the-dark rule is nothing more than a specific application of the principle of victim fault or negligence in a narrow range of circumstances. As a principle of the former contributory negligence, the step-in-the-dark rule was never intended to increase the burden already carried by the plaintiff to show that the defendant or a condition of the defendant's premises caused him harm. It was simply an affirmative defense which, if established by a defendant, barred a plaintiff's recovery. We see no reason why this rule would, or should, increase the plaintiff's burden under a comparative fault regime. Rather, it would simply reduce the plaintiff's recovery by a percentage of fault assessed by the factfinder, which is precisely what the jury did in the instant case. Therefore, we find no manifest error in the trial court's omission of the requested jury instruction.
Nor do we find that the fault allocation of the jury assessing Ms. Kessler with 40 percent fault to be clearly wrong. There are simply two versions of the evidence regarding the defendants' liability, and the jury believed the plaintiff's version. The jury obviously concluded that the kitchen and banquet room were left open, and the employees of plaintiff's company were not denied access to the area. Further, the jury concluded that the hallway was dark and the bookshelves were placed on the floor by defendant's employees. The plaintiff fell on the bookshelves and sustained injuries.
The jury believed, however, that the plaintiff was also partially at fault and it assessed plaintiff with 40 percent fault. This fact bolsters our opinion that defendants were in no way prejudiced by the court's failure to include the step-in-the-dark rule as a jury instruction, which we conclude was not error in light of the instructions given to the jury *350 regarding victim fault. Accordingly, we find no manifest error in the jury's assessment of fault.
Appellants next contend that the jury erred in awarding the plaintiff $35,000.00 future medical expenses. Defendants submit that there is little, if any, evidence of specific future treatment that would be necessary in the treatment of fibrositis which would support the amount awarded, particularly since the award for past medical expenses was only $14,861.99. Plaintiff argues this amount is justified because she needs therapeutic massages, which are currently $35.00 a session, as part of her physical therapy. Plaintiff has a 33-year life expectancy. Based on a calculation of one massage per week for 33 years, the projected cost of the massages alone is $60,060.00.
An award for future medical expenses is in great measure highly speculative and not susceptible of calculation with mathematical certainty. Nevertheless, awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable costs. Keeth v. Department of Public Safety & Transportation, 618 So.2d 1154 (La.App. 2d Cir.1993), motion to dismiss writ granted, 619 So.2d 563 (La.1993).
Obviously, the jury found from the evidence that the medical bills introduced into evidence by plaintiff were related to the accident and her permanent disabled condition and that she would, based on the testimony, incur future medical expenses as well as physical therapy expenses. Dr. Robert Goodman, a rheumatologist, testified that the condition was permanent, and Ms. Kessler could expect to obtain relief only by medication and physical therapy. Dr. Robert H. Coffield, an orthopedic surgeon from the Mayo Clinic, testified that physical therapy and massage therapy would be appropriate treatment to relieve the pain from Ms. Kessler's shoulder problems. Based upon this record, we cannot say that the jury abused its discretion in awarding the plaintiff $35,000.00 for future medical expenses including physical therapy.
Appellants claim that the jury erred in the amount awarded for past lost wages and future loss of earning capacity. They submit that the plaintiff continued to work for some time after the accident, and that the real reason she was no longer working was that the company that employed her went out of business. Regarding loss of future earning capacity, appellants submit that the trial court erred in allowing testimony from Dr. Melvin Harju, plaintiff's economic expert, whose testimony, they argue, was based upon income tax returns not introduced into evidence. Furthermore, appellants argue that plaintiff did not establish that she could not return to work in the type of executive job she previously held inasmuch as it was sedentary work. To support this, they cite the testimony of plaintiff's expert, Dr. Goodman, who testified that many people with fibromyalgia could do sedentary work. Appellee responds that Dr. Goodman's testimony regarding sleep disorders from the illness and a resulting inability to concentrate incapacitated the plaintiff and she could no longer do her previous job.
Awards for loss of future income or future earning capacity are inherently speculative and insusceptible of calculation with mathematical certainty. The factors to be considered in determining future lost income include the plaintiff's physical condition before and after his injury, his past work record and the consistency thereof, the amount the plaintiff probably would have earned absent the injury complained of, and the probability that he would have continued to earn wages over the balance of his working life. A loss of future income award is not really predicated upon the difference between the plaintiff's earnings before and after a disabling injury. Such an award is predicated, more strictly considered, upon the difference between the plaintiff's earning capacity before and after a disabling injury. Odom v. Claiborne Electric Co-op., Inc., 623 So.2d 217 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1171 (La.1993).
We have reviewed the trial record, and we cannot say that the trial court abused its discretion in its award for loss of future earning capacity. The award is supported by *351 testimony and other documentary evidence such as W-2 forms, even if, as appellants assert, the court erroneously allowed plaintiff's economic expert, Dr. Melvin Harju, to partially base his testimony regarding plaintiff's income on income tax returns not admitted into evidence. The jury obviously found convincing the testimony of plaintiff and other witnesses who testified that after the accident, Ms. Kessler could not concentrate at work due to sleep problems and pain.
In contrast to awards of future earning capacity and medical expenses, awards for past lost wages are not susceptible to the much discretion rule afforded the factfinder because they are susceptible to mathematical calculation. Eddy v. Litton, 586 So.2d 670 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La.1992). Past lost income can be computed on an amount the plaintiff would in all probability have been earning at the time of trial and damages for loss of past income are not necessarily limited to a multiplier of the amount earned at the time of injury. Spangler v. North Star Drilling Co., 552 So.2d 673 (La.App. 2d Cir. 1989).
The jury's award of $96,000 for lost past income is supported by the record. The jury obviously found the lost income projections of Dr. Harju credible and awarded that amount.
Finally, appellee appeals the damage awards for past and future pain and suffering which were $50,000 and $25,000, respectively. Appellee argues that $250,000 is the lowest reasonable award under the facts and circumstances of the case.
General damages are those which may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitively measured in monetary terms. Odom v. Claiborne Electric Co-Op., Inc., supra; Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2d Cir.1990) writ denied, 573 So.2d 1135 (La.1991).
When damages are insusceptible of precise measurement, much discretion is left to the trial court for the reasonable assessment of these damages. LSA-C.C. Art. 1999. In reviewing the amount of an award of damages, the appellate court's function is to determine whether this great discretion has been abused, and not whether the amount of the award is manifestly erroneous or clearly wrong. Coffin v. Board of Supervisors of Louisiana State University, 620 So.2d 1354 (La.App. 2d Cir.1993). If the appellate court finds an abuse of discretion, the appellate function is limited to raising inadequate awards to the lowest amount the trial court could reasonably have awarded and lowering excessive awards to the highest amount the court could have reasonably awarded. Coffin, supra.
The appropriate procedure for testing whether the trial court abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the factfinder. Coffin, supra; Bailes v. U.S. Fidelity and Guaranty Co., 512 So.2d 633, 643 (La.App. 2d Cir.1987).
After a review of the record, we conclude that award of $75,000 for past and future pain and suffering, while on the low scale, is not so low as to constitute an abuse of discretion. Accordingly, we decline to disturb the award of the trial court.
In accordance with the reasons set forth in this opinion, the judgment of the trial court is affirmed at the cost of defendants-appellants.
AFFIRMED.
NORRIS, J., concurs in part and dissents in part.
Norris, J., concurring in part and dissenting in part.
I concur in the court's opinion insofar as it affirms the jury verdict finding Southmark 60% at fault in creating an unreasonably dangerous condition in the premises it owned and leased to the company by whom Ms. *352 Kessler was employed. I also concur in the affirmance of the special damage awards.
I respectfully dissent, however, from the majority's refusal to conclude that the total general damage award of $75,000 is abusively low. While there is not much jurisprudential guidance in cases of fibrositis, the record objectively shows that Ms. Kessler loses sleep on a regular basis, suffers from painful stiffness, and has had to significantly abridge her activities, all as a result of this accident. Under the circumstances, the least she could have been reasonably awarded was $125,000. I would raise the general damage award to this level.