liBROWN, Judge.
This is an action for damages arising out of an automobile accident that left plaintiff, Deann Holt, with severe and permanent injuries. The trial court assessed 50% of the liability to defendant, State of Louisiana, Department of Transportation and Development (“DOTD”), and 50% to plaintiff, Deann Holt. Damages totaling $8,971,761.90 were awarded to Deann and her parents, reduced by the percentage of fault apportioned to Deann. Plaintiffs and defendant have appealed, asserting error in the court’s fault apportionment and assessment of damages. We affirm.

Factual Background and Procedural History

On December 19, 1985,18-year-old Deann Holt was driving her 1985 Buick Skylark west on Spring Street in Haynesville, Louisiana. Deann stopped at a stop sign, then pulled her car into the intersection of Spring Street and U.S. Highway 79. Donald Bailey, who was driving north on Hwy. 79, saw Deann as she pulled into the intersection and responded quickly, slamming on his brakes. However, he was unable to avoid a collision with Deann’s car.
At the time of the accident, Deann was a junior in high school. She suffered from Ellis von Creveld Syndrome (dwarfism) and had undergone numerous operations as a child. As a result of the accident, Deann fractured her skull and was rendered unconscious. Following brain surgery, Deann remained in a deep coma, a vegetative state, for seven months. Deann underwent intensive rehabilitation and gradually regained partial use of her right hand and right leg and partial control over her bladder and bowels. Deann has learned to communicate with sign language and with the use of a computer. Deann’s condition is known as double spastic hemiplegia; she is a quadriplegic.
Suit was filed by Jackie and Carolyn Holt, Deann’s parents, and by Jackie Holt on Deann’s behalf. Named as defendants were the State of Louisiana, through the DOTD; South Central Bell Telephone Company; Louisiana Power & |2Light; the Town of Haynesville; Donald Bailey and his insurer; and the Holts’ uninsured motorist carrier. All of the defendants except for DOTD have been dismissed.
The trial, which lasted for six days, began on July 19, 1993. The trial court’s written reasons for judgment were rendered on December 9, 1994, and judgment in accordance with those reasons was signed on January 4, 1995.
The trial court found that the intersection of Hwy. 79 and Spring Street was dangerous because of sight obstructions on the right of way and the lack of an adequate traffic control device. Maintenance of Hwy. 79, part of the Louisiana state highway system, was the state’s responsibility. The court found that the sight obstructions were a cause-in-faet of the accident and that DOTD had knowledge of the intersection’s problems. In fact, DOTD had conducted a sight distance study at this intersection in 1970.
Next, the court found that the actions of Donald Bailey, driver of the truck that struck Deann, was not at fault. The court then addressed the issue of Deann’s fault and concluded that she failed to stop her car at a point where she could see both ways and that she drove into the intersection when it was not safe to do so. The court found that Deann’s negligence was a eause-in-fact of the accident.
The fault of DOTD and Deann was then compared and 50% of the fault was allocated to DOTD and 50% was apportioned to Deann.
Damages totaling $8,971,761.90 were awarded to plaintiffs; general damages of $3,000,000 and special damages of $5,771,-761.90 were awarded to Deann Holt. Jackie and Carolyn Holt were each awarded $100,-000 for loss of consortium. These awards *1168 were reduced by the 50% fault apportioned to Deann.
Both parties have appealed, asserting error in the trial court’s apportionment of fault and assessment of damages.
13 Testimony
As a result of her injuries, Deann Holt lacked the communication skills to describe what happened and she has no memory of the accident. In addition to Donald Bailey, the driver of the truck that struck Deann’s automobile, the accident was witnessed by Billy Crump, the owner of the gas station on the northeast comer of the intersection, and Melvin Hicks, an Arkansas resident who was driving south on U.S. Hwy. 79 when the accident occurred.
On December 18, 1985, after a hair appointment, Deann left a beauty shop on Spring Street. The beauty shop is less than one block from the intersection of Spring Street and Hwy. 79. Deann was heading west on Spring Street. Donald Bailey, after leaving work and going home to pick up some Christmas presents, was driving north on Hwy. 79 to a Mend’s business establishment to store his children’s gifts.
Donald Bailey stated that he was going 35 m.p.h. and was looking north, the direction he was traveling. When he first saw Deann, she was already entering the intersection heading west. Bailey stated that he was unable to see her sooner because the line of trees on the right of way obscured his vision of the intersection. Deann was looking to her right (north). She looked back to her left (south) and saw Bailey just before the impact. Bailey does not know how fast Deann was traveling and does not know whether she stopped at the stop sign on Spring Street. As soon as he saw Deann, he applied his brakes, leaving 15 feet of skid marks on Hwy. 79.
Billy Crump owns a gas station at the intersection of Spring Street and Hwy. 79. Crump stated that on the date of the accident, at approximately 5:00 p.m., he was standing inside the station when he saw Deann back away from the beauty shop and stop at the stop sign on Spring Street. Crump testified that Deann came to a complete stop; the front of her car was even with the stop sign, which is ^approximately nine feet from the imaginary intersection line of Hwy. 79. While Deann was stopped a few vehicles passed on Hwy. 79. Crump stated that Deann pulled away from the stop sign into the intersection in front of the approaching track driven by Donald Bailey.
Melvin Hicks testified via deposition. Hicks stated that he was driving south on Hwy. 79. He saw Deann’s car on Spring Street. Deann was not yet to the stop sign when he turned to wave at Crump at the gas station. Hicks stated that Deann did not stop at the stop sign, or, if she did stop, it was a rolling stop.
Several witnesses described the intersection as difficult and dangerous because of trees and bushes on the right of way that obstructed the view from the Spring Street stop sign. The stop sign, located approximately nine feet from the intersection, is the only traffic control device at the intersection.
Dr. Stephen Richards, plaintiffs’ expert, stated that the accident occurred when Deann Holt drove into the path of Bailey’s truck. In Dr. Richards’ opinion, it was highly probable that Deann’s action “was a direct result of the lack of sight distance at this intersection.” Dr. Richards also ascribed fault to Deann.
Records reviewed by Dr. Richards showed that 18 accidents had occurred at the intersection in a ten year period, seven involving vehicles traveling west on Spring Street. Two mayors had requested that a stop light be placed at the intersection. The state conducted studies of the intersection in 1970 and again in 1986. Both times, the state found that a traffic signal was not warranted.
Dr. Richards testified that the standards of the American Association of State Highway Officials (“AASHTO”), require sight distance studies be performed with the assumption that the front bumper of the vehicle will be at least ten feet from the intersection. The Manual on Uniform Traffic Control Devices (MUTCD), does not allow a stop sign to be placed closer than four feet from an ^intersection. According to the MUTCD, a *1169 stop sign should be placed where the front of the vehicle is to stop.
Dr. Richards stated that at a position ten feet from the imaginary intersection line of Hwy. 79, a driver at the stop sign could see 312 feet to the left, a distance within the AASHTO standards for the posted 30 m.p.h. speed limit.
Dr. Olin Dart was retained by dismissed defendant, Louisiana Power & Light, to investigate the accident. Based upon his investigation, Dr. Dart felt that there was adequate sight distance for Deann Holt, looking left, to have seen the approaching Bailey truck.
Dr. Dart did not feel that the 1970 DOTD study of this intersection revealed a sight line problem severe enough to cause difficulties. He further stated that from an engineering standpoint, there was no need to remove any impediments on the east right-of-way of U.S. Hwy. 79 looking south from Spring Street, the position that Deann Holt was in prior to the accident.
Dr. Dart opined that anyone approaching the intersection could put themselves in a position for adequate sight distance. Dr. Dart felt that Deann improperly entered the intersection because she looked left, then right, but then failed to look back to the left.
Dr. Ned Walton testified as DOTD’s expert. Dr. Walton based his analysis of the accident upon Billy Crump’s testimony and a physical examination of the intersection. Dr. Walton testified that when he stationed his vehicle at the stop sign on Spring Street, he was able to see at least 300 feet to the left and 350 feet to the right. From a spot just before the stop sign on Spring Street, Dr. Walton determined a line of sight of 400 feet to the left, which would be in the middle of the northbound lane of U.S. Hwy. 79. This is in excess of the 300 feet minimum required by AASHTO standards and the 85th percentile speed requirements of 34.1 m.p.h. determined from the 1970 DOTD study.
| sAccording to Dr. Walton, a prudent driver should get as close as two to three feet from the imaginary intersection line, if necessary, to obtain adequate sight distance. At the intersection of Spring Street and Hwy. 79, if a driver placed his vehicle where he could get maximum distance left and right, there were no sight problems. This could be done without infringing on Hwy. 79.
The stop sign on Spring Street was 8'10" east of the imaginary line of Hwy. 79. The distance from the front of a bumper of a 1985 Buiek Skylark, the car driven by Deann Holt, to the driver’s position ranges from six to seven feet. For Deann’s eyes to be even with the stop sign, her vehicle would have been 2'10" from the Hwy. 79 roadway.
Dr. Walton stated that the Bailey truck was probably 165 feet from the intersection when Deann began moving into the intersection and would have been visible to Deann had she looked back to her left. Thus, Dr. Walton believed that the accident was caused by Deann pulling into the intersection when it was not safe to do so.

Discussion

DOTD contends that the trial court erred in finding it liable for the accident. According to defendant, the accident was caused wholly by the fault/negligenee of plaintiff, Deann Holt. Alternatively, should it be determined that DOTD is liable, the trial court erred in allocating 50% of the fault to DOTD.
Plaintiffs assert that the trial court erred in finding that Deann was at fault/negligence and that her fault/negligenee was a cause-in-fact of her injuries. In the alternative, plaintiffs argue that the majority of the fault should have been allocated to DOTD.

Liability/Fault of DOTD

The elements which a plaintiff must prove to recover damages from a government defendant based on a defective condition of a roadway are the same, ^whether based on negligence or strict liability. LSA-R.S. 9:2800; Faulkner v. State, Dept. of Transportation & Development, 25,857 (La.App.2d Cir. 10/26/94), 645 So.2d 268, writ denied, 94-2908 (La. 01/27/95), 649 So.2d 390; Valet v. City of Hammond, 577 So.2d 155 (La.App. 1st Cir.1991).
A plaintiff must prove: (1) that the defendant owned or had custody of the thing which caused the damage; (2) that the thing *1170 was defective in that it created an unreasonable risk of harm to others; (3) that the defendant had actual or constructive knowledge of the defect or risk of harm and failed to take corrective action within a reasonable time; and (4) causation. Faulkner, supra; Newsom v. State, Dept. of Transportation and Development, 93-815 (La.App. 3d Cir. 03/30/94), 640 So.2d 374, writ denied, 94-1118 (La. 06/24/94), 641 So.2d 207; Valet, supra.
DOTD has stipulated ownership and custody of U.S. Hwy. 79. DOTD also does not contest the trial court’s finding that it had actual or constructive knowledge of the defect or risk of harm posed by the sight obstructions on the right of way. However, defendant argues that the trial court erred in determining that the intersection created an unreasonable risk of harm (breach of duty) and in finding a causal connection between the risk posed by the intersection and the accident and resulting injuries.
DOTD has a duty to maintain public roads in a safe condition so as not to expose the public to unreasonable dangers. Reid v. State, Through Dept. of Transportation and Development, 25,778 (La.App.2d Cir. 05/04/94), 637 So.2d 618, writ denied, 94-1415 (La. 09/16/94), 642 So.2d 198. DOTD, while not the insurer of the safety of drivers using state highways, can not knowingly allow a condition to exist that is hazardous to a reasonably prudent motorist. Reid, supra; Hood v. State, Dept. of Transportation and Development, 587 So.2d 755 (La.App.2d Cir. 1991), writs denied, 590 So.2d 81, 82 (La.1991).
IsThe determination of whether a condition of a highway is dangerous and hazardous is a factual one; the court should consider physical aspects of the roadway, frequency of accidents at that place in the highway and testimony of expert witnesses. Newsom, supra.
Causation is also a fact-specific inquiry. The issue is whether defendant’s conduct was a cause of plaintiffs harm. Rick v. State, Dept. of Transportation and Development, 93-1776 (La. 01/14/94), 630 So.2d 1271. Great deference is accorded the trier of fact on the question of causation. Rick, supra.
The following is taken from the trial court’s well-written reasons for judgment:
The vice or defect created an unreasonable risk of injury. The testimony of witnesses familiar with the intersection was consistent; it was very difficult to see clearly onto U.S. Highway 79 from Spring Street heading west because of the sight obstructions in the right of way. Northbound drivers could not see traffic entering the highway from Spring Street until the same visual obstructions were passed by them. People living or working on Spring Street had accidents or near misses when entering the highway from Spring Street. The experts for both plaintiffs and defendant established that a driver on Spring Street could not see both ways on U.S. Highway 79 at the stop sign and could not have a clear view unless the drivers pulled up to within two feet of the actual highway. The AASHTO standards indicate that the sight distances should be adequate for negotiating the intersection at ten feet away from the intersection and the Manual of Uniform Traffic Control Devices prohibits stop lines from being placed any closer than four feet from the intersection.
All of this evidence indicates that the intersection of U.S. Highway 79 and Spring Street had inadequate view from the east side of the highway for persons driving west on Spring Street because the view was obscured. It was obscured by trees and bushes on the east right of way to U.S. Highway 79 south of Spring Street.
The evidence established that it would have been a relatively simple matter to cure the defect of the sight obstructions on the highway right of way. The objects obstructing the view of drivers were trees and bushes which easily could have been removed. The court finds, therefore, that it was unreasonable for defendant not to cure the sight obstructions on the right of way....
The court finds that defendant breached its duty to travelers such as Deann Holt by allowing the sight obstructions on the highway right of way. These sight obstructions prevented drivers from having a *1171 ladear view of traffic on U.S. Highway 79 at the point indicated by AASHTO standards (ten feet) and the Manual of Uniform Traffic Control Devices (no closer than four feet).
The court finds that the plaintiff established causation. The court finds that the sight obstructions on the right of way south of Spring Street were a substantial factor and cause in fact of the accident. The court also finds that the defendant’s duty to maintain the highway in a safe condition includes the duly to keep the highway and its right of way free of sight obstructions which obscure the view of drivers entering the highway, and that the risk of harm suffered by Deann Holt was within the scope of protection of the duty owed by defendant....
An appellate court may not set aside a trial court’s findings of fact in the absence of clear or manifest error. Stobart v. State, Dept. of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse a trial court’s factual determinations, a court of appeal must find from the record that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987).
We find sufficient support in the record for the trial court’s factual findings that the sight obstructions on the highway right of way posed an unreasonable risk of harm and that this defect was a cause-in-fact of plaintiffs’ injuries. We can not conclude that these findings are either clearly wrong or manifestly erroneous.
Having found no error in the trial court’s assessment of some liability/fault on the part of defendant, DOTD, we now examine the court’s determination that plaintiff, Deann Holt, was also at fault/negligent in causing the accident.

Liability¡Fault of Deann Holt

Individual drivers owe a duty of being reasonably observant of conditions that either might affect the operation or use of their vehicles that would pose an unreasonable risk of harm to others. Faulkner, supra. This includes the duty to use their automobiles reasonably and to maintain a proper lookout for hazards which might pose an unreasonable risk of harm. Id.; Thomas v. Petrolane Gas Service Ltd., 588 So.2d 711 (La.App.2d Cir.1991), writ denied, 590 So.2d 1201 (La.1992).
Deann Holt was attempting to proceed across a favored thoroughfare, U.S. Hwy. 79, from an inferior road, Spring Street. Traffic flow at the intersection of Spring Street and Hwy. 79 was regulated by a stop sign on Spring Street. Thus, Deann was bound by LSA-R.S. 32:123(B), which provides in part:
[E]very driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
When a motorist is confronted with a stop sign at an intersection, it is her duty to come to a complete stop, to appraise traffic and to make certain that the way is clear before proceeding. Coleman v. Rabon, 561 So.2d 897 (La.App.2d Cir.1990), writ denied, 567 So.2d 617 (La.1990); Vallery v. State, Dept. of Transportation and Development, 480 So.2d 818 (La.App. 3d Cir.1985), writ denied, 481 So.2d 1350 (La.1986). When a motorist stops her vehicle before entering a right-of-way street, she has performed only half of the duty which the law has imposed upon her. To stop and then proceed in the immediate path of oncoming vehicles constitutes gross negligence. Coleman, supra; Vallery, supra.
The following is excerpted from the trial court’s reasons for judgment:
The court finds that Deann Holt had a duty to stop again on Spring Street after she stopped at the stop sign, which duty is *1172 expressed in LSA-R.S. 32:123(B) ... The duty is expressed statutorily as one imposed to prevent creating a hazard to the oncoming vehicles. It is also a duty imposed for the safety of the motorist entering the favored roadway....
The duty of Deann Holt to stop at a point on Spring Street where she had a clear view of the north and south bound traffic on U.S. Highway 79 was a duty imposed in order to prevent the kind of harm suffered by Deann Holt, of colliding with oncoming traffic on the Infavored roadway. Deann Holt breached that duty by failing to stop where she could see the traffic on U.S. Highway 79. As a result of her breaching this duty, Deann Holt’s vehicle was hit by Mr. Bailey’s pickup truck and she was injured. The court finds that Deann Holt was negligent, and that her negligence was a substantial factor in the harm she suffered.
The record supports the trial court’s conclusion that Deann Holt was negligent in failing to stop at a point where she could see traffic traveling both north and south on Hwy. 79 and in entering the intersection when it was imprudent for her to do so. We now address the parties’ arguments relating to the trial court’s fault apportionment.

Allocation of Fault

The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La. 01/16/96), 666 So.2d 607. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Clement, supra. It is the court of appeal’s duty to give deference to the trier of fact. An appellate court may reallocate fault only after it has found an abuse of discretion and then only to the extent of lowering or raising the percentage of fault to the highest or lowest point reasonably within the trial court’s discretion. Hill v. Morehouse Parish Police Jury, 95-1100 (La. 01/16/96), 666 So.2d 612; Clement, supra.
With this precept in mind, we will consider the parties’ assignments of error relating to the trial court’s allocation of fault.
Both DOTD and plaintiffs contend that the trial court erred in allocating 50% of the fault for the accident to them and argue that the majority of the fault should have been assessed against the other party.
When the fault of a motorist and the fault of a governing body responsible for warning motorists against unusually dangerous road hazards combine to | ^produce an accident, comparative negligence is applicable. Gadman v. State, Dept. of Transportation and Development, 493 So.2d 661 (La.App.2d Cir.1986); Brown v. State Through Dept. of Transportation and Development, 572 So.2d 1058 (La.App. 5th Cir.1990), writ denied, 581 So.2d 710 (La.1991).
The principle of comparative fault is codified in LSA-C.C. Art. 2323:
If a person suffers injury, death or loss as a result partly of his own negligence and partly as a result of the fault of another person, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
The proper allocation of fault requires an analysis of both parties’ conduct. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985). In apportioning fault, the following factors are to applied:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) how great a risk was created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior; and
(5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.
*1173 Watson, supra; Faulkner, supra; Coley v. State, Dept. of Transportation and Development, 621 So.2d 41 (La.App.2d Cir.1993).
The trial court analyzed the conduct of DOTD and Deann Holt and found the instant case to be factually apposite to Mullins v. Melerine, 636 So.2d 240 (La.App. 4th Cir.1993), writ denied, 636 So.2d 913 (La.1993). In Mullins, trees and weeds on the shoulder of a state highway obscured the vision of the plaintiff-driver, who was injured when she entered into the intersection and attempted a left turn although unable to see oncoming traffic. The trial court’s assessment of |i8100% fault to DOTD was reversed by the appellate court, which assessed 50% fault to plaintiff-driver.
While the written reasons for judgment do not reflect the trial court’s specific application of the Watson factors, we nonetheless find no manifest or clear error in the court’s assessment of fault in this case. Thus, we will not reassess fault.

Damages

The trial court awarded the following damages, subject to reduction by the percentage of fault allocated to plaintiff, Deann Holt:
Special Damages
Past medical expenses: 450,413.63
Future medical expenses: 4,819,438.60
Housekeeping services: 51,878.35
Past attendant care: 240,051.65
Lost earning capacity: 190,629.67
Loss of business income: 19,350.00
Total special damages: $5,771,761.90
General Damages
Plaintiff, Deann Holt Past and future pain/suffering: 3,000,000.00
Plaintiff, Jackie Holt Loss of consortium: 100,000.00
Plaintiff, Carolyn Holt Loss of consortium: 100,000.00
Total general damages: $3,200,000.00
TOTAL DAMAGES: $8,971,761.90
Less 50% (fault of Deann Holt): $4,485,880.95
| yJAmitation on Liability of DOTD
Before we address the parties’ arguments regarding the excessiveness/inadequa-cy of the damages awarded by the trial court, we will consider the impact of the recent amendment to Article XII, § 10(C) of the Louisiana Constitution which authorized the legislature to limit or cap the state’s liability.
LSA-Const. Article 12, § 10 provides a general prohibition against sovereign immunity:
Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
*1174 In 1975, the legislature enacted LSA-R.S. 13:5106, which placed a cap of $500,000 on general damages awarded in suits against the state, a state agency or political subdivision. This cap was declared unconstitutional by the Louisiana Supreme Court in Chamberlain v. State, Dept. of Transportation and Development, 624 So.2d 874 (La.1993).
In the 1995 legislative session, the legislature passed Act No. 1328, which was a joint resolution to submit to the electorate an amendment to Article XII, § 10(C) of the Louisiana Constitution. The amendment authorized the legislature to limit and otherwise provide for the extent of liability that could be imposed on the state, state agencies and political subdivisions. The resolution contained in Act No. 1328 provides:
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages_ The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. (Emphasis added).
| isThe amendment passed and became effective on November 23, 1995. Also during the 1995 legislative session, the legislature enacted Act No. 828, which amended LSA-R.S. 13:5106 to provide for a $750,000 cap on general damages when and if the constitutional amendment passed. Act No. 828 provides in part:
In any suit for personal injury, the total amount recoverable, exclusive of medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed the limit of liability in effect at the time of judicial demand. On the effective date of this Subsection, the limit of liability shall be seven hundred fifty thousand dollars. (Emphasis added).
However, the legislature did not provide for applicability to existing claims. There is no limitation on the state’s liability in the instant case because LSA-R.S. 13:5106 was declared unconstitutional by the supreme court in Chamberlain, supra. Thus, the $500,000 cap set forth in R.S. 13:5106 was not applicable at the time of judicial demand. Therefore, at that time, there was no effective limit of the state’s liability.[1]

General Damages

DOTD argues that the trial court’s general damage award of $3,000,000 is excessive.
General damages involve mental or physical pain and suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which can not be definitively measured in monetary terms. Keeth v. State Through Dept. of Public Safety and Transportation, 618 So.2d 1154; Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App.2d Cir. 1990), writ denied, 573 So.2d 1135 (La.1991).
| isThe discretion vested in the trier of fact is vast; an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Rick, supra; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. den. sub. nom. Maritime Overseas Corp. v. Youn, — U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
At the time of the accident, Deann Holt was a high school junior. She suffered from Ellis von Creveld Syndrome (dwarfism) and had undergone numerous operations as a child. As a result of the accident, Deann *1175 fractured her skull and was rendered unconscious. Following brain surgery, Deann remained in a deep coma for seven months. Deann underwent intensive rehabilitation and gradually regained partial use of her right hand and leg and partial control over her bladder and bowels. Deann has learned to communicate with sign language and with the use of a computer. Deann’s condition is known as double spastic hemiplegia; she is a quadriplegic.
After considering the severity of Deann’s injuries and the permanency of her condition, we cannot say that the trial court abused its vast discretion and will not disturb the court’s general damage award of $3,000,000.

Future Medical Expenses

Both DOTD and plaintiffs assert that the trial court erred in awarding future medical expenses in the amount of $4,819,-438.60. DOTD contends that the court should have awarded $3,704,735.00, the present value for Deann’s future medical expenses as calculated by DOTD’s economist, Dr. Randy Rice. Plaintiffs argue that the trial court should have awarded between $9,895,472.00, the cost for a_[jj“New Medico” treatment facility as calculated by Dr. Rice, and $10,254,124.69, Dr. Hugh Long’s projected cost for a “New Medico” treatment program.
An award for future medical expenses is speculative, and although insusceptible of determination with mathematical certainty, must be established, like any other element of damages, with some degree of certainty. Keeth, supra; Hunt v. Board of Supervisors of Louisiana State University, 522 So.2d 1144 (La.App.2d Cir.1988). Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and their probable costs. Kessler v. Southmark Corporation, 25,941 (La.App.2d Cir. 09/21/94), 643 So.2d 345; Keeth, supra.
The following is taken from the trial court’s written reasons:
On behalf of the Holts, Dr. Hugh Long, an economist, testified regarding ... the present value of the cost of Deaim’s future medical care. Dr. Randy Rice testified on behalf of the DOTD; he is also an economist. He testified about ... the present value of the cost of her future medical care. The two economists used different funding assumptions and discounting methods. As to the care regime both analyzed, that is, living in a facility such as where she is now residing (Bell Oaks) and being provided with the medical and therapeutic care recommended for her, based on her history of medical needs, the two had vastly different conclusions.
The trial court calculated the ratio of the difference in the economists’ calculations for the Bell Oaks regime with additional therapy, applied this ratio to the predicted cost of the New Medico regime recommended by Dr. Jones and came up with an award of $4,819,-438.60 for future medical expenses. Keeping in mind the speculative and imprecise nature of awards for future medical expenses, we find no error in the trial court’s award in this case.

Past Attendant Care

After Deann was released from the hospital, her parents, Jackie and Carolyn Holt, provided 24-hour-a-day care for her until her move to a total care facility, approximately 43 months. The Holts hired Carolyn Shelton to help care for | igDeann; she was paid $51,878.35 for her services. Because of the amount of care required by Deann, Carolyn Holt quit work and Jackie Holt hired a salesman and an office manager for the family business.
The trial court awarded the Holts $241,-051.65 for the attendant care they provided Deann. The Holts were also awarded $51,-878.35 for housekeeping services. We find no abuse of the trial court’s discretion regarding these damage awards.

Lost Earning Capacity

Awards for loss of future income or future earning capacity are inherently speculative. Kessler, supra. The factors to be considered in determining future lost income/eaming capacity include plaintiffs physical condition before and after her injury; her past work record and the consistency *1176 thereof; the amount plaintiff probably would have earned absent the injury complained of; and the probability that she would have continued to earn wages over the balance of her working life. Kessler, supra; Keeth, supra.
The trial court’s reasons for judgment reflect her consideration of the above factors and was based on a minimum wage scale. We can not say that her award of $190,629.67 for Deann’s loss of earning capacity was an abuse of discretion.

Conclusion

For the reasons set forth above, the trial court’s judgment is AFFIRMED. Costs are assessed equally to plaintiffs and defendant.

. The Fifth Circuit, in Begnaud v. Dept. of Transportation and Development, 95-714 (La.App. 5th Cir. 02/14/96), - So.2d - [1996 WL 78363] was faced with this very issue. The court held that the effectiveness date for the imposition of the cap was the date of judicial demand, as provided by the legislature in Act No. 828. Since LSA-R.S. 13:5106 was declared unconstitutional, it was thus invalid at the time of judicial demand. Therefore, there was no limitation on the state's liability.